EMMA R. DRAKE *vs.* HORACE O. WELLS.
SAME *vs.* DAVID WYMAN.
SAME *vs.* WILLIAM E. HEWINS.

If the owner of land for a valuable consideration orally licenses another to cut off within a certain time the trees standing upon it, and afterwards executes an absolute deed of the land to a third person, such deed, when made known to the licensee, will operate as a revocation of the license, although the grantee had knowledge of it.

THREE actions of tort in the nature of trespass *quare clausum.* At the trial in the superior court, before *Rockwell,* J., the following facts appeared: In November 1863 Manley Drake put up and sold at auction the standing wood on the close described, in several parcels, and the defendants each became the purchaser of one or more of said parcels; and at the auction the auctioneer stated publicly, and as one of the terms of sale, that the purchasers might have until the middle of the following June to cut and remove the wood from the land.

At the same auction, and after the sale of the wood had been completed, the land was put up by the same auctioneer for sale, in two lots; and the plaintiff, through an agent who was present at the sale of both wood and land and heard the terms of

sale stated by the auctioneer, bid off and became the purchaser of one of the lots, and Azel Drake purchased the other. Sub·sequently in the same month deeds of the lots were executed by Manley Drake to Emma R. Drake and Azel Drake; and on the 12th day of February 1864 Azel Drake sold and conveyed by deed the lot purchased by him to the plaintiff. All the deeds above mentioned were entered for record on the 14th of June 1864; but it was not contended, at the argument in this court, that the defendants were ignorant of the sale of the land by Manley Drake, and the execution of the deeds thereof, at the time when the trees were cut.

The deeds from Manley Drake to the plaintiff and Azel Drake, and the deed from said Azel to the plaintiff, were warranty deeds, containing no reservation of standing wood, or of any right to enter upon the land to cut or remove the same ; and all the acts of trespass complained of consisted in cutting and carrying away the wood sold, and were committed by the several defendants prior to the 15th of June 1864.

Upon these facts, the judge instructed the jury that the plaintiff was not entitled to recover in either of said actions, and verdicts were accordingly rendered for the defendants. The plaintiff alleged exceptions.

*J. E. Carpenter,* for the plaintiff.

*W. Colburn,* for the defendants.

Bigelow, C. J. The doctrine is now well settled that a sale of timber or other product of the soil, which is to be severed from the freehold by the vendee under a special license to enter on the land for that purpose is, in contemplation of the parties, a sale of chattels only, and cannot be regarded as passing an interest in the land, and is not for that reason required to be in writing as being within the statute of frauds. Such license to enter on the land of another, so far as it is executed, is irrevocable ; because, by the severance of the timber or other growth of the soil from the freehold, in execution of the license, it becomes personal property, the title to which is vested in the vendee ab·solutely, and the rule applies that where chattels belonging to one person are placed or left on the land of another, with the

permission or assent of the latter, the owner of the chattels has an implied irrevocable license to enter and remove them. In such case the owner of land cannot, by withdrawing his assent to enter on his premises, deprive the owner of chattels of his property, or prevent him from regaining possession of them The law will not lend its aid to the perpetration of a fraud. But it is otherwise where the contract has not been executed by a severance of the subject matter of a contract of sale from the freehold. So long as the timber or other product of the soil continues in its natural condition, and no act is done by the vendee towards its separation from the soil, no property or title passes to the vendee. The whole rests in contract. A revocation of the license to enter on the land does not defeat any valid title; it does not deprive an owner of chattels of his property in or possession of them. The contract being still executory, no title has passed to the vendee, and the refusal of the vendor to permit the vendee to enter on the land for the purpose of disconnecting from the freehold the property agreed to be sold is only a breach of contract, the remedy for which is an action for damages, as in the common case of a failure or refusal to deliver ordinary chattels in pursuance of a contract of sale.

These principles have been recognized and established as the law of this commonwealth in several adjudicated cases. In *Claflin* v. *Carpenter*, 4 Met. 580, 582, it was held that a contract for the sale of standing wood to be cut and severed from the freehold was to be construed " as passing an interest in the trees when they are severed," and that a license to enter on the land under such contract could not be countermanded after it had been acted on. So in *Nettleton* v. *Sikes*, 8 Met. 34, it was said by the court that a beneficial license to be exercised on land, " when acted upon under a valid contract cannot be countermanded." To the same effect are *Nelson* v. *Nelson*, 6 Gray, 385, and *Douglas* v. *Shumway*, 13 Gray, 498. In these cases it appeared that the license had been acted on by the vendee, who had entered on the land and cut the timber which was the subject of the contract of sale, and had thereby acquired a title to the wood as personal property. In *Giles* v. *Simonds*,

15 Gray,    , a case was presented where a vendee had entered on land under a contract of sale of standing wood, and had cut down a part of those which was agreed to be sold, when he was forbidden by the vendor, the owner of the land, from proceeding any further in the execution of the contract, and also from removing those which had been severed from the freehold. He nevertheless did go on the land and take away such of the trees as had been previously cut down. It was held that the vendor had a right to terminate the contract and revoke the license as to the trees left standing, but that he could not do so as to those which had been already cut, and that an action of trespass would not lie for entering and taking away the latter. See also *Burton* v. *Scherpf*, 1 Allen, 135.

The application of the principles established by these cases is decisive of the rights of the parties to these actions. Taking the most favorable view of these cases in behalf of the defendants, they had acquired no title to the wood standing on the land of the plaintiff. They had only an executory contract for the purchase of the trees growing on the premises, with a license from the plaintiff's grantor to enter and cut and remove the same. This license, not having been acted on, was revocable. And it was revoked by the deed of the land to the plaintiff by the licensor, by which it was conveyed absolutely and free of all incumbrances to the plaintiff. In *Cook* v. *Stearns*, 11 Mass. 533, 538, it was held that the transfer of land to another, or even a lease of it, without any reservation, would, of itself, be a countermand of a license. Clearly it must be so, because an unqualified grant of land carries with it the title to everything which is part of the realty or annexed to the freehold, and is inconsistent with a right in any other person than the grantee to enter on the land and remove therefrom trees growing thereon or other products of the soil. *Coleman* v. *Foster*, 1 Hurlst. & Norm. 37.

It follows that the ruling of the court was erroneous at the trial of this cause. The defendants were trespassers, and were liable to the plaintiff for entering her close and cutting and removing wood therefrom.            *Exceptions sustained.*