## JOHN R. BANTON

### *vs.*

### GEORGE A. SHOREY AND FRANK A. PORTER.

Penobscot.   Opinion January 10, 1885.

*Mortgage.   Record.   Growing timber, contracts for sale of.   Statute of frauds.*

A mortgagor sold growing timber upon the mortgaged premises and gave the purchaser the following written permit: "Alton, Sept. 24th, 1882. This is to certify that Frank Porter has bought four hundred knees, more or less, of me, Hatcil Gott, on Lot No. 25, and has paid me in full ($70) seventy dollars. Hatcil Gott." "And this is to certify that I, Hatcil Gott, do defend the above writing. Hatcil Gott." The knees were severed from the soil and removed from the land and the stipulated price paid by the permittee before the mortgage was recorded or the permittee had notice thereof. *Held,* in an action of replevin by the mortgagee against the permittee that the title to the knees was in the defendant.

Parol or simple contracts for the sale of growing timber to be cut and severed from the land by the vendee do not convey any interest in lands, and are not therefore within the statute of frauds.

ON REPORT.

Replevin of a lot of knees. The report provided that the law court should determine which party had the better title to the property and enter judgment accordingly.

The opinion states the facts.

*Davis and Bailey*, for the plaintiff.

The permit conveyed no interest in the land. *Drake* v. *Wells*, 11 Allen, 142; *Claflin* v. *Carpenter*, 4 Met. 580; *Giles* v. *Simonds*, 15 Gray, 441; 1 Greenl. Ev. § 271; *Pease* v. *Gibson*, 6 Maine, 81; *Trull* v. *Fuller*, 28 Maine, 548.

While Gott by proper deed might have given an innocent purchaser a title to the land or to the trees, he could not himself, as against the mortgagee, cut one of the trees in question. How can he then give a license to another to do that which he himself cannot do? Counsel further cited: *Boggs* v. *Anderson*, 50 Maine, 161; *Marshall* v. *Fisk*, 6 Mass. 30; *Blood* v. *Blood*, 23 Pick. 80; 17 Pick. 364; 13 Gray, 502; 6 N. H. 250; R. S., c. 73, § 8; *Dunlop* v. *Avery*, 89 N. Y. 599; *Stowell* v. *Pike*, 2 Maine, 387; *Hammatt* v. *Sawyer*, 12 Maine, 426; *Bussey* v. *Page*, 14 Maine, 132; *Frothingham* v. *McKusick*, 24 Maine, 403; 32 Maine, 167.

*John Varney*, for the defendants.

FOSTER, J. This is an action of replevin in which the plaintiff claims title to the property in dispute as mortgagee under a mortgage of real estate from one Hatcil Gott, dated November 10, 1881, but not recorded till January 12, 1883.

The defendants claim title to the same property from said Gott by virtue of an instrument, or writing, in the following words:

"Alton, September 24, 1882.

"This is to certify that Frank Porter, of Alton, has bought four hundred knees, more or less, of me, Hatcil Gott, on Lot No. 25, and has paid me in full, $70.00 (seventy dollars).

Hatcil Gott.

"And this is to certify that I, Hatcil Gott, do defend the above writing. Hatcil Gott."

It is admitted that the knees therein named had been severed from the soil, removed from the land, and the stipulated price paid for them by these defendants, before the plaintiff's mortgage was recorded, and before they had any notice of the same.

As both parties claim title from the same source, the one who has the superior right must prevail.

The defendants claim to be purchasers without notice of any adverse interest in any other party till long after their title had become perfected by means of the above writing and by the severance and removal of the knees from the land, and payment of the price stipulated ; and they invoke, as against the plaintiff's asserted title, the following provision of the statute (R. S., c. 73, § 8,) : "No conveyance of an estate in fee simple, fee tail, or for life, or lease for more than seven years, is effectual against any person, except the grantor, his heirs and devisees, and persons having actual notice thereof, unless the deed is recorded as herein provided."

On the other hand, the plaintiff says that the defendants have obtained no title to the knees, inasmuch as the trees from which they were taken were a part of the realty ; that the defendants' writing was not such an instrument as would convey any interest in real estate, and that while the statute would protect an innocent purchaser of the land, or any interest in it, it is no protection to those who purchase as in this case.

We are not prepared to admit this doctrine as correct either upon principle or authority. The language of the statute is plain and positive, and has been regarded as prohibitory. *Houghton* v. *Davenport*, 74 Maine, 593. "The provisions of the statute for registering conveyances is to prevent fraud, by giving notoriety to alienations." *Norcross* v. *Widgery*, 2 Mass. 508. The record of a mortgage is constructive notice of its contents to all subsequent purchasers. As to them the mortgage takes effect, not because of its prior execution, but by reason of its prior record. "The whole object of the registry acts is to protect subsequent purchasers and incumbrancers against previous conveyances which are not recorded, and to deprive the holder of previous unregistered conveyances of his right of priority, which he would have at common law." 1 Jones, Mort. § § 557, 576; *Curtis* v. *Deering*, 12 Maine, 499.

The statute is for the benefit and protection of all persons who have any interest in examining the record title to property to

which they may thereafter become owner, either in whole or in part, absolutely or otherwise.

The court in Massachusetts, in considering the provisions of a similar statute, in a recent case, says : "But for the protection of *bona fide* creditors and purchasers, the rule has been established, that although an unrecorded deed is binding upon the grantor, his heirs and devisees, and also upon all persons having actual notice of it, it is not valid and effectual as against any other persons. As to all such other persons, the unrecorded deed is a mere nullity. So far as they are concerned, it is no conveyance or transfer which the statute recognizes as binding on them, or as having any capacity to affect their rights, as purchasers or attaching creditors. As to them, the person who appears of record to be the owner is to be taken as the true and actual owner, and his apparent seizin is not divested or affected by any unknown and unrecorded deed that he may have made." *Earle* v. *Fiske*, 103 Mass. 492.

It appears that the record title of the premises, from which this timber was taken, at the time of the purchase and removal by these defendants, was in Hatcil Gott. They had a right to look to the record for their protection as against any outstanding title.

It is a principle too well settled to need any citation of authorities, that standing trees, and such as were the subject of purchase in this case, are part and parcel of the real estate. Yet they may be, and very frequently are, the subject of sale and removal as distinct from the remaining parts of the realty, and title thereto may be obtained otherwise than by deed, when the same have, in connection with an executory contract of sale, been severed from the soil and removed by the vendee.

And the rule, as settled by modern decisions in reference to this question, is this,— that parol or simple contracts for the sale of growing timber, to be cut and severed from the freehold by the vendee, with reference to the statute of frauds, and to give effect to them, have been construed as not intended by the parties to convey any interest in land, and, therefore, not within the statute of frauds. They are held to be executory contracts for

the sale of chattels, as they may be afterwards severed from the real estate, with a license to enter on the land for the purpose of removal. *White* v. *Foster*, 102 Mass. 378; *Claflin* v. *Carpenter*, 4 Met. 583; *Poor* v. *Oakman*, 104 Mass. 316; *Parsons* v. *Smith*, 5 Allen, 578; *Erskine* v. *Plummer*, 7 Maine, 451; *Davis* v. *Emery*, 61 Maine, 141; *Freeman* v. *Underwood*, 66 Maine, 233; 1 Wash. R. P. 3* § 7; Benj. on Sales, § 126, note, and cases there cited; *Marshall* v. *Greene*, 1 L. R. C. P. Div. 44; *Nettleton* v. *Sikes*, 8 Met. 35; *Ellis* v. *Clark*, 110 Mass. 391.

In this case the defendants, it is true, entered under an executory contract for the sale of growing timber, and which, in accordance therewith, they severed from the land and carried away, paying the consideration named. As to such timber thus cut and removed the contract became executed, and the title to which vested in the defendants as soon as it was severed from the land. *Erskine* v. *Plummer*, 7 Maine, 451; *Buck* v. *Pickwell*, 27 Vt. 157. They became purchasers, then, and so far as any record title at that time disclosed, there was nothing to indicate that Gott was not the real owner. Nor can it make any difference with the plaintiff whether their title to the timber which was cut and removed by them came to them by this executed contract, or by deed. They became purchasers of it as much in the one case as they would have in the other, and had the same right to the protection of record title. The contract was no longer executory, but executed. A severance, in fact, had been made by the vendees in the cutting and removal. Supposing, instead thereof, Gott had executed a deed of the timber to these defendants. The counsel for the plaintiff in that case assumes that the defendants would have obtained title to the timber and been protected as purchasers by the statute hereinbefore named in relation to recording titles. There are very respectable authorities that hold a conveyance by deed of growing trees to be a severance in law from the land, so that they become personal property without an actual severance. Upon this doctrine Prof. Washburn (1 R. P. 3,* § 7) remarks, in speaking of title derived from an executed contract: "The same effect, however, of passing property in trees may be accomplished by conveyance

of them by deed as growing trees, if done by the owner of the freehold. It is so far considered a severance of the property in the trees from that in the soil, that the vendee may, after that, sell and pass title to them by a mere writing, though they have not been actually severed from the soil." *Kingsley* v. *Holbrook*, 45 N. H. 322; *Gooding* v. *Riley*, 50 N. H. 407; *Hoit* v. *Stratton Mills*, 54 N. H. 110; *Warren* v. *Leland*, 2 Barb. 613. However this may be, it does not become material here, for in this case the severance was actual, and we can see no reason why the vendees did not obtain the same title as they would have by a deed. If the record would protect them in one case, it certainly ought to in the other.

As between the vendor, the party in whom the title of record appeared, and the vendees of this timber, the title thereto became vested in them when it was severed from the soil; to be sure, as to so much as might remain uncut, the seller had the right, at any time before severance, to revoke the license to enter, sever and remove it, and thereby prevent the vesting of the title to such as might remain uncut; but as to this timber which had been cut, or severed from the soil, the contract had been executed, the license irrevocable, and the purchasers' title thereto valid. As to such they were more than mere licensees; they were purchasers of property, with license incidental to an executed contract. *Giles* v. *Simonds*, 15 Gray, 443. In speaking of the rights of purchasers in reference to contracts of this nature, the court, in the last case, says that the license " is subsidiary to this right of property;" and that this right in the property " is not derived from the license, but exists in the owner by virtue of a distinct and separate title."

The authorities cited by the counsel for the plaintiff, defining the rights and liabilities between mortgagor and mortgagee, do not conflict with any principles of law herein stated. It will be found that those cases were decided upon facts entirely different from these in the case at bar; there, the mortgages had been properly recorded prior to the acts complained of, and the mortgagor was either the primary agent or efficient hand in the commission of the injury against the estate of the mortgagee.

Here, the mortgagee could have protected himself as against any and all parties, whether as purchasers or *tort feasors*, by complying with the provisions of the statute before the rights of other parties intervened.

In accordance with the stipulation in the report we are of the opinion that the defendants have the better title to the property in question, and that the entry should be,

*Judgment for defendants.*

Peters, C. J., Danforth, Virgin, Emery and Haskell, JJ., concurred.