GULLICKSEN ET AL., RESPONDENTS, *v.* SHADOAN ET AL., APPELLANTS.

No. 8954

Submitted March 16, 1950. Decided May 26, 1950.

218 Pac. (2d) 714

Mr. George Y. Patten, Bozeman, Mr. Roy M. Keister, Bozeman, for appellants. Mr. Patten argued orally.

Mr. Howard M. Lewis, Bozeman, for respondents. Mr. Lewis argued orally.

MR. JUSTICE BOTTOMLY:

Action by plaintiffs for the possession of certain lands and the timber growing thereon and for an injunction against defendants, restraining them from trespassing upon, and from cutting or removing any trees or timber from.said lands.

Judgment for plaintiffs and defendants appeal.

The facts are as follows: The land here involved is the northwest quarter less .92 acre conveyed to William W. Stapleton, by deed December 4, 1931, and the south half of section 17, township 2 south, range 7 east, M. P. M., Gallatin county, Montana. This land is impressed with certain easements which are not pertinent here.

Prior to and on the 27th day of April 1946, Edward L. Blender, also known as E. L. Blender, and Alberta Blender, his wife, were the record owners, entitled to possession and in possession of the above described lands. April 27, 1946, E. L. Blender and Alberta Blender, as parties of the first.part, executed a written purported contract with defendant John M. Shadoan, Jr., as party of the second part, whereby said first parties agreed to sell to the party of the second part all saw timber and house log timber available on said section 17.

August 10, 1948, plaintiffs and Edward L. Blender and Alberta Blender, his wife, entered into a contract whereby the Blenders agreed to sell to the plaintiffs Willard A. Gullicksen and Erma F. Gullicksen, husband and wife, and the plaintiffs agreed to purchase from the Blenders the above described land.

September 3, 1948, a warranty deed was executed and delivered by the Blenders to the plaintiffs conveying to the plaintiffs the above described lands. The consideration passed was a total of $18,000, $12,000 paid in cash, and a note from the Gullicksens to the Blenders of $6,000. During the negotiations between the plaintiffs and the Blenders for the purchase of the lands, the plaintiffs inspected the lands on the 4th, 5th and 10th of August 1948. They noticed the sawmill; they noticed some stumpage on section 17, but thought the logs from such stumpage were for the building of the new log house and other log buildings located on section 17. At the time of their inspection of the said lands the Shadoans had been logging on section 17 for over two years under their contract.

The questions presented are:

1. What rights did the Shadoans acquire under their contract with the Blenders?

2. Were the plaintiffs Gullicksens innocent purchasers for value of the land without notice of the agreement between the Blenders and defendants Shadoans for the sale of timber?

The agreement between the Blenders and John M. Shadoan, Jr., is as follows:

"This Agreement entered into this 27 day of April 1946 between E. L. Blender and Alberta Blender (his wife) who will hereafter be known as party of the first part and John M. Shadoan, Jr., who will be known as party of the second part,

"Party of the first part agrees to sell to party of the second part all saw timber and house log timber available on Section 17, Township 2 Range 7 East, Gallatin County, Montana, at $2.50 Spruce, Government Scale to be made by Government Timber Cruisers (as soon as they are available). Expense of the cruise to be paid by party of the first part,

"Party of the first part gives party of the second part permission to trespass as much as necessary to cut, saw and remove timber and the use of two mill sites of approximately ten acres each (said sites to be selected by party of second part)

"All buildings built by party of second part on mill sites are to become property of party of the first part at the time party of the second part completes sawing and removal of all saw timber and house logs from above described property.

"With exception of one log cabin which is now the property of party of second part and will be moved onto Mill site, from present location, party of second part reserves the right to move this one log cabin from premises at any time.

"It is also agreed that party of second part may move buildings from mill site to the other.

"In consideration of One Hundred Dollars paid by check to party of first part on March 9, 1946. * * * Balance in cash within thirty days after completion of timber cruise.

"Date: 4/27/46 Signed E. L. Blender
 E. B. Kaltz party of the first part
 R. E. Shadoan Alberta Blender
 witness party of first part
 John M. Shadoan, Jr."
 Party of second part"

The foregoing contract is set forth in the answer of the defendants and it is alleged that the foregoing instrument was in the name of John M. Shadoan, Jr.; that it was for the use and benefit of himself and the defendant Ray Shadoan; that E. L. Blender and Alberta Blender, his wife, were then the owners in fee of the above described lands and all of the growing timber thereon. Plaintiff admit the foregoing in their reply.

The said written agreement was not acknowledged and was not filed for record nor recorded in the office of the clerk and recorder of Gallatin county.

The plaintiffs contend that any writing between the Blenders and John M. Shadoan, Jr., whether the foregoing instrument or similar thereto, was and is a mere permission or license by

Blenders to Shadoans to enter upon said lands and to trespass solely for the purpose, and no other, of cutting, sawing and removing therefrom certain saw timber and house log timber of spruce and of naught else, and when, and not before, said spruce timber was so selected and identified, and had been cut, sawed and removed by him, then said spruce timber became no longer a part of the soil or realty, and was personal property, then the Blenders were to sell the said cut, sawed and removed spruce timber to the Shadoans and not otherwise; that said agreement was merely executory and applied to conditions which might, or might not, be fulfilled in the future concerning standing timber involved in this action, and has never been, was not, and as to said standing timber, had never been performed nor executed; that no title to the timber passed, or was to pass, until such severance and removal thereof from said lands; that said writing is wholly void, and of no effect, as to passing of any title whatever as to said real estate, or any of said standing, growing, or uncut timbers here involved; that such license granted to Shadoans by Blenders was revokable at the will of Blenders, and said license was revoked by the Blenders; that said instrument was never acknowledged, as to entitle it to be recorded and it was never recorded in the office of the county clerk and recorder of Gallatin county, Montana; that plaintiffs had no notice thereof, nor any knowledge thereof, in any way, or at all, until long after they purchased said lands and took possession thereof, on or about the 3rd day of September 1948.

The defendants Shadoans contend: That under the said agreement with the Blenders of April 27, 1946, the Blenders sold to the Shadoans all of the saw timber and house logs available on section 17, township 2 south, range 7 east, Gallatin county, Montana; this agreement gave the Shadoans right to go upon the lands and cut and remove all of the said timber; that the Shadoans went upon the said land and into the possession of the said timber and had been cutting and removing the timber for nearly two and a half years when plaintiffs purchased the land; defendants under their contract with the Blenders and by vir-

tue of their purchase and ownership of the said timber and right to enter upon said lands and cut and remove the same did enter and take possession of the same on August 1, 1946, and began cutting and removing timber therefrom and have continued to do so until enjoined; that while so engaged plaintiffs were negotiating to buy the land from the Blenders; that plaintiffs came upon the land and premises and inspected the same and observed that defendants were in possession and were actually engaged in cutting and removing timber therefrom at said time and that before purchasing said lands, the plaintiffs had full knowledge and notice of the ownership by the defendants of said timber and of their right to enter upon said lands and cut and remove the same; that defendants continued actively to cut, saw and remove the timber until they were enjoined.

It should be noted that we are not here confronted with any disagreement, conflict or cause between the Blenders who were the owners of the land and timber in question at the time of the execution of the agreement for the sale of the timber to the Shadoans, but a conflict of interests between the Gullicksens, as successors in interest of the Blenders and against the Shadoans.

The contract for the sale of the timber by the Blenders to the Shadoans, not being acknowledged, was not entitled to be recorded and it was not filed or recorded and therefore did not appear in the abstract of title, and of itself it gave no constructive or any notice to a prospective purchaser of the land.

A fair interpretation of the above-quoted agreement for the sale of the timber and house logs, under its terms, the intention of the parties and their operation thereunder shows conclusively that the intention of the parties was that the Blenders sold and the Shadoans bought all of the saw timber and house logs on section 17, township 2, range 7 east, Gallatin county, Montana, and from the testimony it appeared that it was agreed between them and computed that there was 750,000 feet of saw timber and house log timber standing on the section for which the Shadoans paid Blenders in full for same the sum of $1,875.00, and that the defendants Shadoans had removed approxi-

mately 180,000 feet at the time of the service of the complaint and summons for injunction, leaving approximately 570,000 feet which the Shadoans had purchased and paid for but had not severed from the land. As was said by this court in R. M. Cobban Realty Co. v. Donlan, 51 Mont. 58, 66, 149 Pac. 484, 487, "Owners of property have the right to be foolish as well as wise, prodigal as well as provident; and, whichever they are, it is the business of the courts to enforce their contracts freely made and plainly expressed."

While this unacknowledged and unrecorded instrument was good and valid as between the Blenders and the Shadoans, it was not such as to an innocent purchaser of the land without notice thereof.

Thus do both the plaintiffs Gullicksens and the defendants Shadoans claim by and through contracts given them by the Blenders who were the legal and equitable owners of the title and fee to the property here involved.

The above-quoted agreement for the sale of the timber and house logs did not under any theory of our statutes create an interest in the real estate so as to pass title to the growing timber.

In most of the timbered states just such controversies as we are confronted with here have arisen and the rule generally well established is set forth in 34 Am. Jur., "Logs and Timber," sec. 19, p. 503, as follows: "Ordinarily a bona fide purchaser of the land without notice of the existence of an unrecorded deed to the timber will take title clear of such encumbrance. On the other hand, it seems clear that a purchaser of timber by a deed which is duly acknowledged and recorded holds his title as against a subsequent grantee of the land. A purchaser of real estate is chargeable with notice of the terms of a *recorded* contract for the sale of standing timber thereon * * *." See: R. M. Cobban Realty Co. v. Donlan, supra.

In some jurisdictions actual notice or knowledge of facts sufficient to put a subsequent grantee on inquiry may be suf-

ficient to charge him with notice of an outstanding title to the timber or where a contract for the sale of timber has been recorded or where the doctrine of constructive severance applies, some courts have held that if the subsequent purchaser of the land had actual knowledge of the sale of the timber before the purchase, the interests of the purchaser of the timber will be protected, but the rule of constructive severance does not apply in this state.

It can be noted in passing that a deed from the Blenders conveying to John M. Shadoan, Jr., all the saw timber and house logs, as provided in the contract, which being duly acknowledged and recorded at the time of its execution, would have been good as against a subsequent purchaser, and would have obviated this lawsuit. See: R. M. Cobban Realty Co. v. Donlan, supra.

The principal that when one of two innocent persons must suffer by reason of the wrongful act of a third, that one must bear the loss who by his negligence made it possible for the third person to commit the wrong, is directly applicable here. R. C. M. 1947, sec. 49-135.

Much has been said in this case, both in the briefs and oral argument, as to whether the Gullicksens had notice of the timber sale to the Shadoans before the Gullicksens purchased the land. The evidence is completely conflicting. Two district judges have passed upon this question.

At the close of the first hearing for a preliminary injunction the court's order recited on this point that: ''The court further finds that the plaintiffs and neither of them had any knowledge or information, either from Edward L. Blender, or otherwise, that Edward L. Blender had entered into the agreement between the defendant, John M. Shadoan, Jr., which is marked exhibit 'A' and attached to and made a part of defendants' answer, until after they had purchased said real estate and received and had delivered to them and paid for the real estate on September 3, 1948; that at the time they purchased said real estate, Edward L. Blender and Alberta Blender, his wife, were in possession of the same, and the plaintiffs had no knowledge or information

that the defendants claimed any interest therein or any interest in the timber growing thereon, and that any possession on the part of the defendants of said real estate was not brought home to the plaintiffs and was not such as would affect the title of the plaintiffs under said deed."

On the trial of the case another judge presided, the action being tried before the court without a jury. The judge in his findings states: "The court further finds that the location of said saw mill on said section sixteen (16), Township Two (2) South of Range Seven (7) East of the Montana Principal Meridian, and which the plaintiffs had neither heard or seen in operation prior to said September 3, 1948, when they paid for and received a deed to the real property described in finding of fact 1, above, and the felling of trees, if any, and the carrying on or performing of lumbering operations, if any, on the said real property so purchased by them, and which the plaintiffs did not see, hear or know of prior to said September 3, 1948, did not, nor did either thereof, put plaintiffs, or either of them, on notice, and the same did not impart to or provide plaintiffs, or either of them, with notice, knowledge or information of the existence of the agreement (Defendants' Exhibit A) entered into between the said E. L. Blender and Alberta Blender, his wife, and the defendant, John M. Shadoan, Jr."

In 17 R. C. L., "Logs & Timber," sec. 10, pp. 1078, 1079, it is said: "In view of what has been said in reference to the character of timber as real estate, it would seem clear that the purchaser of the timber by deed, which is duly acknowledged and recorded, holds his title as against a subsequent grantee of the land, and the same is true when the timber is reserved or excepted in the deed by which the grantor of the subsequent grantee took title. * * * The sale of standing timber by a written instrument not acknowledged or recorded as a deed amounts only to an executory contract or revokable license which is revoked by a subsequent conveyance of the land to another person * * * And this conclusion would be reached even if it should be held that the original agreement was not within the statute of frauds and

therefore valid as between the parties thereto. * * * and the fact that the purchaser of the timber has paid for the same in full will not affect this conclusion. Nor will the fact that the grantor of the land gave notice to the grantee that the timber had previously been sold to another. *The purchaser of the timber will be compelled to seek redress from his vendor.* The lawful way for a vendor of timber to protect his vendee under such circumstances would be to reserve the timber so sold, in the deed conveying the land. * * * If, however, a grantee has notice of a parol sale and permits the purchaser to continue to act under the license accompanying the sale, it will be considered as unrevoked until expressly revoked by such purchaser or by a subsequent conveyance." Citing many cases from timbered states. Emphasis supplied.

We have read all the cases cited herein and while the questions are not free from difficulty and there being eminent authority to the contrary, we believe the weight of authority and the better reasoning is expressed and set forth in Emerson v. Shores, 95 Me. 237, 49 A. 1051, 1052, 85 Am. St. Rep. 404, being a very similar case, where the court said:

"It has accordingly become settled law under the decisions of this court, and by the great weight of authority elsewhere, that parol or simple contracts for the sale of growing wood or timber, to be cut and removed from the land by the purchaser, are not to be construed as intended by the parties to convey any interest in land, but as executory contracts for the sale of the timber after it shall have been severed from the soil and converted into chattel property, together with a license to enter upon the land for the purpose of cutting and removing it. * * *

"It is equally well settled that, while the license to enter and cut timber, thus created by parol or simple contracts, is irrevocable as to that part of the timber which has been severed from the land in execution of the contract; yet, while it remains executory as to the wood or timber not yet severed from the land, it is revocable not only at the will of the owner, but by his death, or

by his conveyance of the land without reservation. Buker v. Bowden, 83 Me. 67, 69, 21 A. 748; Banton v. Shorey, 77 Me. 48; Russell v. Richards, 10 Me. 429, 25 Am. Dec. 254; Folsom v. Moore, 19 Me. 252; Brown v. Dodge, 32 Me. 167; Drake v. Wells, 11 Allen 141 [93 Mass. 141], Giles v. Simonds, 15 Gray 441, 77· Am. Dec. 373; Douglas v. Shumway, 13 Gray 498; White v. Foster, 102 Mass. 375; Fletcher v. Livingston, 153 Mass. 388, 26 N. E. 1001; Cook v. Stearns, 11 Mass. 533; 13 Am. & Eng. Enc. Law, (1st Ed.), p. 555. * * * The plaintiffs' remedy is an action for damages against the defendant for a breach of her contract with them.''

In Drake v. Wells, 11 Allen 141, 93 Mass. 141, the court said: ''The whole rests in contract. A revocation of the license to enter on the land does not defeat any valid title. It does not deprive an owner of chattels of his property in or possession of them. The contract being still executory, no title has passed to the vendee, and the refusal of the vendor to permit the vendee to enter on the land for the purpose of disconnecting from the freehold the property agreed to be sold is only a breach of contract, *the remedy for which is an action for damages.*'' Emphasis supplied.

In Fletcher v. Livingston, 153 Mass. 388, 26 N. E. 1001, 1002, the Supreme Court of Massachusetts said: ''It is well settled that a contract like that relied on by the plaintiff (an agreement in writing, not acknowledged) does not immediately pass a title to property, and is not a sale, or a contract for a sale, of an interest in land, but an executory agreement for the sale of chattels, to take effect when the wood and timber are severed from the land, with a license to enter and cut the trees and remove them. Such a contract, if oral, is not within the statute of frauds, and its construction is the same as if it were in writing.''

Taking the most favorable view of the defendants' position, under the general rule, we find that they had acquired no title to the standing timber on the land. They had an executory contract for the purchase of the saw timber and house logs growing on the said section 17, with a license from the Blenders

to enter and cut and remove the same, and any acquiescence of the plaintiffs after they came into possession, in the acts of the Shadoans was equivalent to a new license from plaintiffs until revoked by them as it was by their bringing the action for preliminary injunction.

Such a contract as the above, to cut and remove standing timber, cannot be revoked as to acts done under it. The revocation is prospective, not retrospective. Therefore it cannot affect the title to the vendee of trees severed prior to revocation.

Finding no reversible error, the judgment is affirmed.

MR. CHIEF JUSTICE ADAIR and ASSOCIATE JUSTICES ANGSTMAN, FREEBOURN and METCALF concur.