No. 12723

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

DONALD E. PEGG and KAY A. PEGG,
husband and wife,

Plaintiffs and Respondent,

-vs-

MID-STATE DEVELOPMENT CORPORATION,
a Montana Corporation,

Defendant and Appellant,

and

GAIL W. BURLEIGH and ZITA E. BURLEIGH,

Defendants,

and

MARGARET (HARVEY) BARBER,

Defendant and Respondent.

---

Appeal from: District Court of the Tenth Judicial District,
Honorable LeRoy L. McKinnon, Judge presiding.

Counsel of Record:

For Appellant:

Kurth, Davidson & Calton, Billings, Montana
David A. Veeder argued, Billings, Montana

For Respondents:

Theodore P. Cowan argued, Lewistown, Montana
Donald E. Ronish, Lewistown, Montana

---

Submitted: June 14, 1974

Decided: JUL 24 1974

Filed: JUL 24 1974

Thomas J. Kearney
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a judgment for plaintiffs permanently enjoining defendant Mid-State Development Corporation from entry onto lands under a timber purchase contract and from other orders and judgments in regards thereto. The matter was tried to the district court in Fergus County, sitting without a jury.

Plaintiffs, respondents here, are husband and wife and will be referred to as Peggs. Defendant and appellant Mid-State Development Corporation will be referred to as Mid-State.

On April 16, 1969, Don and Margaret Harvey, owners of certain real property, entered into a "Timber Purchase Contract" with Silver City Lumber, Inc. The contract was for cutting and removing timber on certain lands owned by the Harveys. The contract ran until April 30, 1974. The contract was assigned by Silver City to Mid-State on October 12, 1972.

On April 3, 1970, Margaret Harvey, after Don's death, sold the land which was the subject of the timber purchase contract to Gail and Zita Burleigh under a contract for deed. The Burleighs were informed of the timber purchase contract. The contract for deed was for a term of twenty years.

On June 1, 1973, the land which was subject to the timber purchase contract was again sold on a contract for deed by Burleighs to Peggs. Peggs were informed and had actual notice of the timber purchase contract. This contract for deed was for a term of ten years, and required the consent of Burleighs before the purchasers, Peggs, could contract for the sale of timber, which consent was given for the subject timber purchase contract.

In mid-September 1973, Peggs received notification from Mid-State by telephone and by letter that Mid-State would go upon the land to harvest the timber.

On September 24, 1973, Mid-State was restrained by a temporary restraining order from such entry; and subsequently the restraining order was made permanent. A motion to quash the temporary restraining

order was denied. Motions for summary judgment were made by each party. The trial judge granted summary judgment to Peggs. Appeal is taken from the order denying the motion to quash and the judgment entered on the motion for summary judgment.

The court made findings of fact and conclusions of law in which the trial judge determined that the timber purchase contract amounted only to a revocable license to enter Peggs' land which license was revoked by Peggs. The judge further determined the timber purchase contract was ambiguous by reason of its escalator clause, and therefore it was impossible to determine the consideration of the contract.

The issues here go, in the main, to the foregoing determinations. Two basic questions are: (1) Is the timber purchase contract a valid contract? (2) If valid, may such a contract be revoked unilaterally by the purchaser under an executory contract for deed where the purchaser had actual knowledge of the contract?

The timber purchase contract provided:

### "TIMBER PURCHASE CONTRACT

"This Contract Made and entered into this 16 day of April, 1969, by and between SILVER CITY LUMBER, INC., A Montana Corporation, the party of the first part, hereinafter referred to as the BUYER, and Don E and Margaret A Harvey, of Lewistown, the party of the second part, hereinafter referred to as the SELLER,

### "W I T N E S S E T H

"THAT WHEREAS, the SELLER is the owner of the following described property situated in Fergus County, and more particularly described as follows:

| "T 15 | R 19 | | |
|--------|------|--------|------|
| "sec. 24 | S 1/2 of SE 1/4 | sec. 25 | N 1/2 of NW 1/4 |
| | SE 1/4 of SW 1/4 | | SW 1/4 of NW 1/4 |
| | | | W 1/2 of NE 1/4 |

"AND WHEREAS, the BUYER is desirous of buying the merchantable timber on said land and the SELLER is desirous of selling said timber;

"NOW THEREFORE, in consideration of the premises and and mutual covenants and agreement hereinafter set forth, it is agreed by and between the parties as follows:

## "TIMBER TO BE SOLD

"1. The SELLER will sell to the BUYER all of the merchantable timber on the above described lands. The SELLER warrants to BUYER that he has legal title to said timber that it is free and clear of all encumbrances and that he does hereby forever warrant and will forever defend the title to the BUYER against any and all claims of all persons whomsoever.

## "PURCHASE PRICE

"1. The BUYER agrees to pay the SELLER the sum of nine dollars ($9.00) per thousand feet for all species.

## "SCALING

"1. All logs shall be scaled by the BUYER'S scaler when delivered to BUYER'S scaling point. All logs shall be scaled with the Scribner Decimal C log rule. Saw logs shall not be considered merchantable unless they have a net sound scale of at least 50% of their gross scale. If the SELLER is at any time dissatisfied with the log scaling, the SELLER may at his own expense hire his own log scaler. In the event the BUYER and the SELLER'S log scaler cannot agree on the log scaling, the two scalers shall hire a third and independent scaler who shall be paid equally by the BUYER and SELLER. The decision of two out of three of the scalers shall in such event be binding upon the parties. Timber will be crused before cut. M.H.
D.E.H.

## "PAYMENT

"1. The BUYER will pay to the SELLER upon the signing of this agreement, the sum of $75.00 receipt of which is hereby acknowledged by the SELLER. This sum is to be treated as an advance payment on the initial stumpage. The BUYER will pay the SELLER for all timber so cut and removed between the first and fifteen of the month by twentieth of the month, and for all timber so cut and removed between the fifteenth and the end of the month by the fifth of the following month.
$500.00 deposit paid before timber is cut. M.H.
D.E.H.

## "SLASH DISPOSAL

"1. The BUYER will pay the State Forester $1 per thousand for slash disposal.

## "TERM OF AGREEMENT

"1. It is hereby agreed and understood by the parties herein that this contract shall continue in effect until April 30 1974.

## "INGRESS AND EGRESS

"1. The BUYER shall have the right over said property to build all roads necessary for the removal of said timber, together with the rights of ingress and egress over and along said roads and elsewhere over said premises necessary for cutting and removal of said timber.

## "BUYER TO HOLD SELLER HARMLESS

"1. In all logging operations hereunder conducted by the BUYER, the BUYER will at all times protect and save harmless the SELLER and his property against claims for labor, materials or supplies furnished and against and from any and all liens and claims of liens therefore. SELLER shall be reimbursed by the BUYER for any damage done to the fences, gates, cattle guards or livestock of the SELLER'S that is attributable to the acts of the BUYER, his agents, servants, or employees.
Timber price will be esculated each year.
M.H.
D.E.H.

## "DEFAULT

"1. In the event of any default under the terms of this contract by the BUYER, the SELLER shall give written notice stating the manner in which the BUYER is in default on said contract. Upon the receipt of such written notice of default all logging operations on said land shall cease at once until the said default has been corrected; and unless the BUYER can and does correct said default within 30 days of the time of receipt of said notice, the SELLER may cancel and termintate this agreement.

## "TIME OF ESSENCE

"1. Lastly, it is agreed that time is of the essence of this contract and that all of the covenants and agreements herein contained shall extend to and be obligatory upon heirs, executors, successors and assigns of the parties herein.

"IN WITNESS WHEREOF, the parties have hereunto set their hands the date hereinabove first written.

"SELLER:                          S/ Don E. Harvey
                                     Margaret A. Harvey

"BUYER:
                                     SILVER .CITY LUMBER, INC.

                                  S/ By: Michael A. Holmes"

Is the sale of standing timber under such a written contract of sale a sale of goods subject to the Montana Uniform Commercial Code or is it simply a sale of an interest in land, hence subject to the laws of real property?

Peggs rely on Gullicksen v. Shadoan, 124 Mont. 56, 218 P.2d 714, for the proposition that an executory contract for sale and removal of growing timber is a mere license revocable at the will of the owner. This Court there held that title to the trees severed passed until the license was revoked. In Gullicksen the purchaser by deed was an innocent purchaser for value, unlike the instant case.

- 5 -

Mid-State urges the effect of the Montana Uniform Commercial Code. This code was enacted by the Montana legislature in 1963 to become effective at midnight on January 1, 1965, and therefore it applied to transactions entered into and events occurring after that date and was the law in Montana at the time of the execution of this timber purchase contract.

Under the code, Title 87A, goods are defined at section 87A-2-105(1), R.C.M. 1947, as:

> "* * * 'Goods' also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (section 87A-2-107)."

Mid-State dwells on the application of the Uniform Commercial Code to such a contract. However, we believe the same result is reached under the general contract law as it applies to realty. No problem concerned with the statutes of fraud appears. No problem with lack of knowledge appears. From the findings of the trial court, the contract was found to be ambiguous because of the escalator clause, "Timber price will be esculated each year."

It is evident from a reading of the contract that money was to be paid in a minimum amount, $9.00 per M for the timber removed with an additional amount to be paid as an escalator. As Montana statutory law indicates in sections 13-506 through 13-509, R.C.M. 1947, the amount of such additional consideration may be determined other than specifically in the contract. The additional consideration amount here could be determined by the use of Prescott's testimony presented at a hearing on February 20, 1974. Prescott testified that the Silver City Lumber, Inc. escalator clause dated November 8, 1968, only a few months before this contract, would have been intended by the parties. The only difference between that clause and this was the minimum price was $8.00 per M, rather than $9.00 per M.

The validity of escalator clauses is annotated in 63 ALR2d 1339. There was testimony undisputed, that the term escalator has a positive and definite meaning in the Lewistown area.

The facts show the contract to have been in writing with a good and valid consideration and no ambiguity appears.

We return now to the Gullicksen case. In 18 ALR2d 1152, this statement is made:

> "* * * one who purchases land with notice, actual or constructive, of a prior sale of the timber thereon, or a grant of rights in such timber, to a third person, is generally held to take subject to such rights in respct of such timber as might have been asserted by the latter against the vendor or grantor."

The annotation cites Gullicksen in support and at page 1153 of the annotation in 18 ALR2d, it is said:

> "* * * a contract for the sale of timber is enforceable against a subsequent vendee of the land to the extent, but only to the extent, that he has, or is chargeable with, notice thereof."

We find this to be the correct view. In the instant case the trial court found "there has been no proof of custom or usage in the area that would give meaning to the so-called 'escalator' clause; that in fact the contract put in evidence for that purpose set out a method of arriving at the price in that contract at any given time, quite contrary to the clause in this case." The evidence does not bear this out. This case was determined on a motion for summary judgment. At most, it can be said that the evidence may have been conflicting as to the intent of the parties; and by that statement it is evident that the case was not ripe for summary judgment. However, as we read the testimony, it was not contradicted that the escalator clause had a definite and fixed meaning in the a rea and as intended by the parties.

In Gullicksen statements of this Court could be taken to mean that notice of the timber contract is not material and would not prevent a unilateral revocation of a license. However the fact was there that no notice was had and such an interpretation is not reasonable. To the extent that the obiter dictum appears in Gullicksen, contrary to what we hold here, it is overruled.

Sorensen v. Jacobson, 125 Mont. 148, 232 P.2d 332, is also cited by Peggs. In that case an oral contract for sale of growing

timber was found to be executory in nature and that title to severed logs passed to the purchaser. It does not conflict with anything we hold here.

The findings of the district court were not supported by the evidence and we find that Mid-State had a valid contract. No valid revocation of the timber purchase contract was shown. Because the contract by its terms expired on April 30, 1974, and because the Peggs caused the delay in harvesting the timber while Mid-State was under the restraining order, Mid-State is entitled to an extension of an equal amount of time to complete the contract.

Accordingly, the order refusing to quash the temporary restraining order and the judgment granted to Peggs are reversed. The cause is remanded to the district court for further proceedings not inconsistent herewith.

_____
Justice

We Concur:

_____

_____

_____
Justices

_____
Hon. Thomas Dignan, District Judge, sitting for Chief Justice James T. Harrison.