[No. 11651. Department Two. April 15, 1914.]

MILLER & SONS, *Respondents*, v. O. S. HANBERG, *Appellant*.[1]

FRAUDS, STATUTE OF—SALE OF STANDING TIMBER—PART PERFORMANCE. The expenditure of $194 in building a skid road, followed immediately by the commencement of the removal of standing timber purchased, is such a part performance of an oral contract for the sale of three hundred' cords of shingle bolts, at 75 cents per cord, with right of way for its removal, as to take the contract out of the operation of the statute of frauds.

APPEAL—REVIEW—HARMLESS ERROR. Technical error relating to the measure of damages for breach of contract is not prejudicial where it appears from the verdict that the correct measure was applied.

. Appeal from a judgment of the superior court for Kitsap county, French, J., entered May 3, 1913, upon the verdict

'Reported in 139 Pac. 1085.

of a jury rendered in favor of the plaintiffs, in an action for breach of contract. Affirmed.

*Arctander & Jacobsen*, for appellant.

*J. B. Yakey* and *C. D. Sutton*, for respondents.

PARKER, J.—This action was commenced to recover damages in the sum of $787.10, which the plaintiffs, a copartnership, claim resulted to them from the breach of a contract for the sale of standing timber by the defendant. A trial resulted in verdict and judgment in favor of the plaintiffs for the sum of $167.50, from which the defendant has appealed.

Respondents own and operate a small shingle mill, in Kitsap county. Appellant owns a twenty-acre tract of land a little more than half a mile from respondents' mill, on which, at the times here involved, there was standing cedar timber, amounting in quantity to some three hundred or more cords of shingle bolts. The allegations of respondents' complaint which we are principally concerned with are as follows:

"That, on or about the 25th day of September A. D. 1912, the plaintiffs entered into an oral agreement with the defendant for the purchase and sale of the timber upon said land for shingle bolts at the rate of 15c per M. manufactured shingles the said purchase price to also include a right of way for a skid road across said land for the purpose of removing said timber and also other timber from adjoining lands not belonging to the defendant, within a reasonable time.

"That in pursuance of the above mentioned agreement, the plaintiffs thereafter proceeded with the performance of their part of said agreement, and entered upon said land and cut a part of the said timber thereon, and built a skid road across said land at great expense, to wit, the sum of $119.93, for the purpose of removing said timber from said land and also adjoining lands.

"That after the plaintiffs had built said skid road and removed only a small part of the said timber, and before they had a reasonable time in which to remove the remainder of said timber, and about the 5th day of November, A. D. 1912,

the defendant, without giving any notice, and without any lawful excuse, wrongfully and intentionally obstructed the said skid road by building a large heavy fence across same, and has forbidden and refused and still forbids and refuses to permit the plaintiffs to remove said obstruction or to make any use whatsoever of said skid road, and has ordered the plaintiffs to keep off of said premises, to the great damage of the plaintiffs as hereinafter more particularly set forth."

Appellant, by his answer, denied these allegations, except he admitted the building of the skid road across his land by the respondents and the exclusion of respondents by him from the land thereafter, alleging the building of the skid road to be without right and a trespass on the part of respondents.

The contention made by appellant which it is necessary for us first to dispose of is that the evidence does not support the conclusion, which, of course, the jury must have reached, that the contract was actually made. We cannot agree with this contention. Negotiations were commenced looking to the making of this contract some two years before the entering upon the land and building of the skid road by appellants, and there was testimony which, if believed by the jury, clearly established that the minds of the parties met before that time in an agreement that appellant should sell to respondents all the cedar timber upon the land at the rate of fifteen cents per thousand manufactured shingles, as alleged in the complaint, with the privilege, on the part of respondents, to construct a skid road for the purpose of removing the timber and also timber from other land. The evidence also shows that seventy-five cents per cord for the shingle bolts to be taken would be the same rate as fifteen cents per thousand manufactured shingles. The conversations seem to refer to the seventy-five cents per cord more frequently than the fifteen cents per thousand shingles. We are quite clear that the evidence was sufficient to support the conclusion of the jury upon the question of the making of the contract and

also the further conclusion, which the jury must have reached, that the contract was still in existence up to the time when appellant excluded respondents from the land after the building of the skid road. Indeed, there is no evidence whatever indicating any attempt to revoke the contract on the part of appellant, his contention being that there never was such a contract entered into.

The argument of counsel for appellant is, however, addressed largely to their contention that the trial court should have decided the case in appellant's favor, as a matter of law, on the ground that the contract for the sale of the timber, if proven, was void because resting in parol, and that, therefore, the respondents acquired no rights whatever. Answering this contention, counsel for respondents insist (1) that appellant is in no position to claim the benefit of the statute of frauds because it is not pleaded; and (2) that, in any event, there was such part performance of the contract by the respondents to secure their rights under the contract from the operation of the statute of frauds. Assuming, for argument's sake, only, that it was not necessary for appellant to specifically set up his claim of the lack of binding force of the contract because of its being such as the statute of frauds requires to be in writing, we are constrained to hold that it became binding upon appellant by virtue of part performance, and that the judgment must be sustained upon this theory.

Respondents built the skid road at a cost of $193.93. There is no serious controversy as to this fact. The contract being established, as the jury must have found, there is practically no room for argument, under the facts shown, against respondents' claim that they built the skid road believing that they were going to be permitted to reap the benefits of their contract with appellant, and solely because of such contract. Immediately following the building of the skid road, or possibly while it was being constructed, respondents cut and removed some seventeen cords of shingle

bolts from the land. They were proceeding with transportation over the skid road of bolts from other land, and were about to proceed with the cutting and removing from appellant's land of the remaining timber covered by the contract when they were prevented from so doing by appellant. While the construction of the skid road involved a somewhat small expense and it was not an improvement of any great importance, yet, in view of the smallness of the entire transaction, it seems clear to us that the building of the skid road and the commencement of the removal of the timber was such a substantial part performance of the contract as removed it from the operation of the statute of frauds.

A situation not wholly unlike this, at least, so far as the principle involved is concerned, is found in *Storseth v. Folsom*, 45 Wash. 374, 88 Pac. 632, where the grant of a logging road right of way and landing was made orally upon sufficient consideration, possession being taken and the road and landing improved at an expense of some $750. This was there held to be such a part performance of the contract as to take it out of the statute of frauds and enable the grantee to assert his rights under the contract. The later logging road decisions of *Northcraft v. Blumauer*, 53 Wash. 243, 101 Pac. 871, 132 Am. St. 1071, and *Koschnitzky v. Hammond Lumber Co.*, 57 Wash. 320, 106 Pac. 900, also lend support to this view, though in those cases, the acts of part performance were of somewaht greater consequence than those here involved. In *O'Connor v. Oliver*, 45 Wash. 549, 88 Pac. 1025, and *O'Connor v. Enos*, 56 Wash. 448, 105 Pac. 1039, oral farm crop leases were involved. The leases, being made in the spring of 1904 for the cropping of the land during the season of 1905, were within the statute of frauds because they were for more than one year. The taking possession of the land in the summer and fall of 1904 and the plowing and cultivating of the land and putting it into condition with a view to raising a crop in 1905, was held to be sufficient part performance to enable the lessees

Apr. 1914]        .        Statement of Case.

to hold the land.   We are of the opinion that the evidence warrants the conclusion that the contract here involved was . sufficiently part performed to remove it from the operation of the statute of frauds.

Some contention is made by counsel for appellant touching claimed erroneous rulings of the trial court relating to the elements of damage.   A critical examination of these contentions might show technical error committed by the trial court; but, in view of the small verdict returned by the jury, and the whole of the evidence rendering it plain that such verdict must have been rested upon a correct measure of damages, that is, the market value of the shingle bolts at respondents' mill, less the cost to respondents of placing the bolts at their mill under this contract, it seems plain to us that, in any event, no prejudice resulted to appellant.

The judgment is affirmed.

CROW, C. J., FULLERTON, MORRIS, and MOUNT, JJ., concur.