DIXIE PINE PRODUCTS CO. *v.* BRELAND.

In Banc. Mar. 14, 1949.

(39 So. (2d) 265)

T. J. **Wills**, for appellant.

**E. C. Fishel**, for appellee.

614

**McGehee, C. J.**

On July 28, 1946, the appellee, Eugene Breland, entered into a written agreement with J. C. Schaffer, a codefendant of the appellant, Dixie Pine Products Company, whereby he was to cut certain pine and hardwood timber on the lands of Schaffer at a stated price per thousand feet of stumpage to be paid as the timber was cut and delivered by the appellee at his own sawmill. ██ ██ The written agreement did not describe the land, and the contract was therefore unenforceable under the statute of frauds as to the standing timber on any particular lands after the license, or permit, as evidenced by the writing, to cut and remove any further timber was revoked by the seller, on or about November 4, 1946, when he undertook to sell the standing timber and the logs which had been cut to a third party.

At the time of the revocation of the above-mentioned license or permit, the appellee had cut approximately 60,000 feet of logs on the land of the value of $1,207.72, but had only removed and paid for the stumpage to the extent of $24.40, and he still owed to Mr. Schaffer appro: imately $500 on the stumpage for the remaining logs which had been cut and which were being bunched in the woods for hauling at the time of the revocation of the license or permit on November 4, 1946. The appellee had incurred an expense of $509.74 in connection with the cutting and the bunching of these logs.

The first notice to the appellee of the fact that Mr. Schaffer had revoked the license or permit was on or

about the said 4th day of November, 1946, when he learned that Les Williams, an alleged independent contractor, was moving the logs from the woods to the mill of the appellant, Dixie Pine Products Company at Hattiesburg, Mississippi, and we think that the jury was warranted in finding as a basis for its verdict in the sum of $687.41 against the said appellant for converting said logs to its own use, that its representative was fully advised of the fact that the appellee had cut the logs from the timber on the homestead land of the codefendant, with the consent of both Mr. and Mrs. Schaffer, and that the appellee owned the said logs, subject to the right of Mr. Schaffer to collect the purchase price thereof per thousand feet. In fact, most of the said logs were removed to the plant of the appellant, Dixie Pine Products Company, after written notice given to it on November 5, 1946, by a letter written on behalf of the appellee by his attorneys, and after the appellee had personally protested to the Vice President of the appellant Corporation against the further removal of such logs.

But it is urged by the appellant that the plaintiff, Eugene Breland, could not maintain his action of trover and conversion against the appellant, Dixie Pine Products Company, and its codefendant, Schaffer, since the defendants claim that the plaintiff only had an equitable interest in the logs in question. Appellant cites authorities which hold that actions of trover and conversion cannot be maintained where the plaintiff owns only an equitable interest in the personal property involved. However, ██ ██ we are of the opinion that the title to the logs in question passed to the purchaser, subject to the right of the seller to enforce a lien for the purchase money thereon, when the standing timber was cut into logs for removal from the lands; that the written agreement, although unenforceable as a conveyance of standing timber, was sufficient to constitute a valid license or permit for the cutting and removal of the same.

In 54 C. J. S., Logs and Logging, Section 29, sub-section c, p. 730, the rule is stated as follows: ██ "Timber severed from the soil under the provisions of a license or permit authorizing it, and before expiration or revocation of the license or permit, becomes the personal property of the licensee or purchaser, and he is vested with the rights incident to ownership of personal property. As fast as trees are severed from the realty, the contract of sale attaches to them as chattels, and the licensee is entitled to remove them as his own, and the owner of the land has no right to take the timber cut under the license without due process of law. ██ Where the timber is cut before the license is terminated by revocation or expires by limitation of time, the licensee is entitled to a reasonable time thereafter in which to remove it, or to cut up the timber already felled and remove it." See also 38 C. J. 186, sub-section b, 45 C. J. S., Logs and Logging, Section 29, and 34 Am. Jur., 522, Section 46, and the numerous authorities cited in support of the foregoing rule.

The codefendant, Schaffer, participated in the conversion of said timber in that he sold the same to the said Les Williams and received the purchase price therefor from the appellant, Dixie Pine Products Company, knowing that the same belonged to the appellee, subject only to his own lien for the purchaser price thereof. There was no material conflict in the evidence except on the issue of whether or not Les Williams was an independent contractor as to the liability of the appellant, but in view of what is herebefore stated as to its knowledge of the facts and the demand made upon it to let the logs alone, we are of the opinion that the conflict in the evidence in that regard is immaterial and that the instruction granted into the plaintiff as complained of were not erroneous.

No cross-appeal is taken by the appellee from the granting of a directed verdict in favor of the codefendant, Schaffer.

The judgment of the trial court rendered on the verdict of the jury must therefore be affirmed.
Affirmed.