ROWAN *v.* ROSENBLATT, et al.

In Banc. April 11, 1949.

(39 So. (2d) 873)

260

Clay B. Tucker, for appellant.

Maxwell Bramlette, for appellees.

**Montgomery, J.**

This is a suit brought by W. L. Rowan against W. L. F. Rosenblatt and his wife, Adeline H. Rosenblatt, for the recovery of a judgment in the amount of $15,000 representing the loss of prospective profits in the operation of a sawmill, and also for an accounting of the actual profits resulting from the operation of said mill.

It appears from the evidence that on January 23, 1945, appellant wrote a letter addressed to the Post Master at Ft. Adams, Mississippi, seeking to purchase a small, idle sawmill that he had been informed was for sale at Fort Adams, Mississippi. This letter was answered by Mr. Rosenblatt, and thereafter considerable correspondence was had between Mr. Rosenblatt and Mr. Rowan. It seems that Mr. Rosenblatt was the owner of a small tractor sawmill which he had been using for the purpose of cutting lumber for his own use from the timber located

on the plantations owned by his wife, Adeline H. Rosenblatt. This correspondence was consummated by a personal interview between Mr. Rowan and Mr. Rosenblatt, and this personal interview finally culminated in the setting up of a partnership agreement in the form of a letter, which was signed by Mr. Rowan and accepted by Mr. Rosenblatt. At the time of the execution of this instrument, there is no dispute in the evidence regarding the ownership of the timber. Mr. Rowan admitted upon the witness stand that he did not at any time have any writing or exchange of writing between him and Mrs. Rosenblatt regarding the sale of the timber on her lands, either to the proposed partnership or to himself as an individual, and at the time of the execution of the partnership agreement, he knew that the title to the timber was in her name, and that the only thing he had from Mrs. Rosenblatt was a verbal agreement that the timber on her lands could be cut by the partnership he had formed with Mr. Rosenblatt, she to be paid the current market price for the timber so cut by the said partnership. The partnership agreement itself provided the following: "You and I agree to pay Mrs. W. L. F. Rosenblatt, who owns no interest in this business, five dollars ($5.00) per month rent for having the mill on her land (while on it), and also pay her the current price for her timber per thousand feet." Mr. Rowan repaired the portable sawmill and put it in good operating condition, and Mr Rosenblatt provided the necessary funds for this purpose. The mill then started operation, and at that time the swamp lands on which most of the desirable timber was located were covered with water, hence the mill operations were confined to timber logged from the hill lands where the logging was difficult and expensive. Mrs. Rosenblatt owned approximately three million feet of timber, and no doubt Mr. Rowan was expecting to cut a large portion, if not all, of this timber by the operation of the portable mill under the partnership.

About the time the water had receded sufficiently from the bottom lands to enable the partnership to log the timber therefrom, Mr. Rowan made a trip to New Orleans and to Baton Rouge and there procured orders for certain cypress lumber that he proposed to manufacture from the timber located on the lowlands. On his return to Fort Adams, he found that Mrs. Rosenblatt had sold some 247,498 feet of timber to the Wax Lumber Company, which sale embraced the most of the lands containing the cypress from which he proposed to fill the orders he had taken in New Orleans and Baton Rouge. Thereupon, he withdrew from the partnership, and shortly thereafter brought suit in the Chancery Court of Wilkinson County, Mississippi, for the recovery of $15,000 from the defendants, which amount he alleges he would have earned had the defendants not breached the contract by the sale of the timber to the Wax Lumber Company; and also he sued for an accounting on the actual earnings of the mill during its operations from May 14, 1945, to October 1, 1945. There was an answer on the part of W. L. F. Rosenblatt denying the allegations of the bill, and a separate answer on the part of Adeline H. Rosenblatt which also denied all of the allegations of the bill. The court proceeded to appoint a Master to state an account between the parties involving the actual operations of the mill under the partnership agreement, and the Master filed his report on March 19, 1947, and a decree was entered on that date showing $162.19 due to W. L. Rowan and $155.50 due to W. L. F. Rosenblatt; and ordered the firm to pay said respective amounts to said respective parties. Thereafter, the cause came on for hearing at the December 1947 term of the court on its merits, involving the recovery of the $15,000 alleged to be the amount the appellant would have earned had the defendants not breached the contract by the sale of the timber to the Wax Lumber Company, all as alleged in his original bill of complaint. Testimony was taken, and at the con-

clusion of the hearing the court entered a decree dismissing the bill of complaint, both as against Mrs. Adeline H. Rosenblatt and as against W. L. F. Rosenblatt. From this decree, the appellant appeals, and assigns four grounds of error.

It is first assigned as error that the lower court erred in sustaining the objection of the defendants to evidence of damages for the loss of profits in the operation of the sawmill by and between appellant and W. L. F. Rosenblatt, appellee, on the ground that such damages were speculative. When Mr. Rowan was on the witness stand, the following testimony was taken:

."Q. Under that contract, had you been permitted to cut the timber in the lowland, what profit if any, would you have made on that timber?

"By Mr. Bramlett: I object to that, your honor.

"By the Court: I sustain the objection.

"Q. Would you have made a profit on that in the lowland? A. Yes, sir.

"By Mr. Bramlett: I object to that.

"By the Court: Mr. Rowan, do you know whether you would have made a profit on the lowland operation and if so, how much? A. No, Judge, I do not know. That would be speculative.

"By the Court: Yes, that is speculative."

The court below was manifestly correct in sustaining the defendants' objection to the complainant's evidence of damages by way of loss of profits because the damage, if any, was purely speculative and was not shown by the testimony with any reasonable degree of certainty, and in addition it was properly sustained for the reasons herafter shown under assignments of error numbers two and three.

The second assignment of error is that "the lower court erred in granting the motion of the appellee, Adeline H. Rosenblatt, to return a decree in this cause, and in dismissing the bill of complaint as to said appellee."

It is undisputed that Adeline H. Rosenblatt was not a member of the partnership composed of her husband, W. L. F. Rosenblatt, and the appellant, W. L. Rowan, and the article of partnership affirmatively shows that she had "no interest in this business." It is also admitted that the partnership held no written contract covering the timber belonging to Mrs. Rosenblatt, and the only evidence tending to establish any oral agreement on the part of Mrs. Rosenblatt for the cutting of her timber is the testimony that when the articles of partnership were signed that Mr. Rowan signed, and then the articles were read by Mr. and Mrs. Rosenblatt and that Mrs. Rosenblatt suggested that her son read them before they were signed, to which Mr. Rosenblatt answered that such was not necessary, and proceeded to sign the articles of partnership. There is no testimony in the record showing that the timber lands of Mrs. Rosenblatt were described in any of the correspondence between her husband and Rowan, nor is there any writing in evidence signed by Mrs. Rosenblatt, herself. If there be any contract for the sale of Mrs. Rosenblatt's timber, it is of necessity an oral contract for the sale of such timber. This Court held in the cases of Walton v. Lowrey, 74 Miss. 484, 485, 21 So. 243; Queen City Hoop Company v. Barnett, 127 Miss. 66, 89 So. 819; Harrell v. Miller, 35 Miss. 700, 72 Am.Dec. 154; Dixie Pine Products Company v. Breland, Miss., 39 So. (2d) 265, and not yet reported (in State reports), that an oral contract for the sale of timber falls with the statute of frauds and that an oral sale of growing timber is merely a license which authorizes an entry upon the land and the cutting and removal of timber thereon, but that such license is revocable at the will of the seller. We held in Dixie Pine Products Company v. Breland, supra, that the title to timber felled, subject to parol agreement, vests in the purchaser, but that such parol agreement is revocable as to the uncut timber at the will of the seller. Here, none of the timber

on the lowlands had been cut, and there was no attempt to revoke the oral agreement as to any lands whereon the timber had been cut. The revocation here was before the cutting of the timber on the lands sold to the Wax Lumber Company, and under the rule announced in the cases above cited, Mrs. Rosenblatt, even if she had made an oral agreement to sell all of the timber on her lands to the partnership above mentioned, neverthless she had an unqualified right to revoke this oral agreement at will as to any uncut timber, and unquestionably had the right under the law to revoke it as to the land she sold to the Wax Lumber Company. ██ ██ For this reason, no cause of action was shown to exist as against Mrs. Rosenblatt, and the court was correct in dismissing the bill of complaint as to her.

The third assignment of error is that the lower court erred in sustaining the motion of the appellee, W. L. F. Rosenblatt, to exclude the evidence offered by appellant, and entering a decree in this cause dismissing the bill of complaint as to said defendant, W. L. F. Rosenblatt.

There is no evidence in this record showing any representation on the part of W. L. F. Rosenblatt that he owned any of the timber on the lands in question, or that he had any right to sell the same. On the other hand, it appears affirmatively that Rowan at all times knew that the timber belonged to Mrs. Rosenblatt. Hence, there could be no breach of contract by W. L. F. Rosenblatt when Mrs. Rosenblatt sold a portion of her timber to the Wax Lumber Company. The accounting for the actual operations of the sawmill had already been had, and an interlocutory decree had already been entered showing the amount due to each of the partners under the accounting, and neither partner filed any objection or registered any protest to the correctness of this statement of the account. Hence, the lower court was manifestly correct in dismissing the bill of complaint as to the defendant, W. L. F. Rosenblatt.

The fourth assignment of error is that the decree dismissing the bill of complaint is contrary to the law and the evidence. This assignment of error is without foundation. The decree of the lower court is supported by the evidence, and the law controlling this case, and the lower court was manifestly correct in entering the decree as entered.

We find no error in this record, and the decree of the lower court will be affirmed.

Affirmed.