SORENSON, ET AL., APPELLANTS, *v.* JACOBSON, RESPONDENT.
No. 9029.
Submitted March 9, 1951. Decided June 8, 1951.
232 Pac. (2d) 332.

Mr. S. P. Wilson, Mr. Marvin K. Daniels, Deer Lodge, for appellant.

Messrs. Keeley & McElwain, and Mr. J. M. Dietrich, Jr., all of Deer Lodge, for respondent.

Mr. Wilson, Mr. Daniels, Mr. Joseph A. McElwain and Mr. Dietrich argued orally.

MR. JUSTICE BOTTOMLY:

Action for conversion of saw logs and for cost of building logging road. The jury's verdict was for defendant. Plaintiffs' motion for new trial was denied and they here appeal from the judgment entered.

Defendant owned rough timber lands upon which was growing timber from which lumber could be manufactured. In October 1946, he entered into a parol agreement with plaintiffs granting them the right to enter his timber lands and to cut and remove therefrom the marketable timber for which plaintiffs were to pay $4.00 per thousand board feet. Plaintiffs immediately began the cutting of the timber and construction of a logging road on defendant's land. There was no time limit for the completion of the cutting of the timber or the removal of the logs.

During the years 1946 and 1947 plaintiffs cut, trimmed, bucked into log lengths, skidded and hauled from defendant's lands to plaintiffs' sawmill and sawed into lumber 300,000 feet board measure of such saw logs, all of which were scaled at

plaintiffs' sawmill and upon sale of the lumber, plaintiffs paid the defendant therefor at the agreed rate.

In July 1948 defendant, through his counsel, directed a written notice to plaintiffs reading:

"Mr. Rex Sorensen:

"Hall, Montana

"Dear Mr. Sorensen:

"Pursuant to a certain verbal agreement entered into between yourself and Mr. Paul Jacobson, owner of certain lands near Helmville, Montana, and by the terms of which verbal agreement you were to cut and haul from Section 18, Township 12, North of Range 12 West, certain timber and to pay Mr. Jacobson, the owner thereof at the rate of $4.00 per thousand feet for such timber cut and hauled. There is now laying on said lands of Mr. Jacobson, between 40 and 50 thousand feet of such timber cut by you, which has not been hauled away or paid for by you. Unless such timber is disposed of in the near future, its value shall be materially decreased, and it shall soon become worthless.

"Therefore, you are hereby notified that unless you pay for and haul away said timber within ten days after receiving this notice, Mr. Jacobson will consider your contract at an end, and dispose of said timber as he best sees fit. Any and all timber hauled by you is to be paid for in advance of taking the same from the said Section 18."

At the time of receving the above notice there were between 70,000 and 75,000 board feet of logs all cut by plaintiffs, lying on defendant's land.

Following the receipt by them of the notice, plaintiffs were engaged in hauling their logs when defendant stopped the operation and demanded that plaintiffs unload the logs from their trucks and ordered that none of the logs be removed until plaintiffs had scaled the logs on the ground where severed and pay defendant therefor.

Thereafter defendant took possession of the logs, caused them to be sawed into lumber, which he claimed and used.

Plaintiffs contend: That as and when such trees were cut and severed from the land they became their personal property; and their title could not be divested except by due process of law and that defendant is liable in damages for the conversion of their logs.

Defendant asserts that the logs were not removed from his land within a reasonable time after notice and that plaintiffs thereby forfeited not only their right to enter upon defendant's lands for the purpose of removing their property, but that they also forfeited whatever rights they may have theretofore had therein and that defendant as owner of the land succeeded to plaintiff's rights in the logs.

The trial court adopted defendant's theory and, over plaintiffs' objections, instructed the jury:

"You are instructed that if you find that no time for removal of said logs was set that plaintiffs had to remove the same in a reasonable time, and if they failed to remove said logs in a reasonable time, then they lost not only their rights to enter the premises, but also whatever right in the logs they may have had."

The parties operated under their simple oral agreement from the fall of 1946 to the summer of 1948, cutting and removing 300,000 board feet of logs all scaled at plaintiffs' mill for which they paid defendant at the agreed rate and in addition thereto plaintiffs also cut, trimmed, bucked and skidded prior to July 3, 1948, between 70,000 and 75,000 board feet of logs which were on defendant's land and ready for hauling when defendant gave his notice; stopped further cutting and hauling and attempted to impose entirely new conditions, namely, that before any of the severed logs could be hauled they were to be first scaled in the woods rather than at the mill and that they were to be paid for in full.

Following this stoppage of plaintiffs' operations, defendant laid claim to the severed logs, delivered a part of them to one Tubbs, and a portion thereof defendant sawed into lumber and used.

152

By the weight of authority such a parol or simple contract for the sale of growing timber, to be cut and removed from the land by the purchaser, is not to be construed as intended by the parties to convey any interest in land, but as an executory contract for the sale of the timber after it shall have been severed from the soil. Such a contract implies a license to enter the lands of the licensor for the purpose of severing the timber and removing the same. The severing of the trees constituted part performance of the contract, the logs becoming the personal property of the licensee. Such partly performed contract does not come within the provisions of the Statute of Frauds. R. C. M. 1947, sec. 13-606; Stillinger v. Kelly, 66 Mont. 441, 443, 214 Pac. 66; Restatement, Contracts, sec. 200(c). See: J. P. Miller & Sons v. Hanberg, 79 Wash. 144, 139 Pac. 1085. Partial performance of an oral contract takes it out of the Statute of Frauds. McIntyre v. Dawes, 71 Mont. 367, 376, 229 Pac. 846, and cases cited therein; Conner v. Helvik, 105 Mont. 437, 452, 73 Pac. (2d) 541. The Statute of Frauds was never intended to cloak fraud, but to prevent it. See: Wells v. Waddell, 59 Mont. 436, 196 Pac. 1000.

It is also well settled that, while the license to enter upon the land and cut timber thereon is irrevocable as to that part of the timber which has been severed from the land, yet while the contract remains executory it is revocable at the will of the owner of the land.

Here the defendant revoked the license as to the growing timber which had not been severed, as was his right, and the plaintiffs did not cut or sever any timber after such revocation. However defendant went further and attempted to revoke the license as to the severed logs. These he could not take without due process of law.

Such contract and license may not be revoked as to acts already done under it. The revocation is prospective and not retrospective. It does not affect the title to the timber which has been severed prior to revocation. Compare: Gullicksen v. Shadoan, Mont., 218 Pac. (2d) 714, 719, and cases cited therein.

We think the general rule set forth in 54 C. J. S., Logs & ▮ Logging, sec. 29 c, pp. 730, 731, is applicable here: ''On severance of timber from the soil under a license, it becomes the personal property of the licensee, and he is entitled to remove it as his own even though, after severance and before removal, the license is terminated by revocation or by expiration of a time limitation.

''Timber severed from the soil under the provisions of a license or permit authorizing it, and before expiration or revocation of the license or permit, becomes the personal property of the licensee or purchaser, and he is vested with the rights incident to ownership of personal property. As fast as trees are severed from the realty, the contract of sale attaches to them as chattels, and the licensee is entitled to remove them as his own, and the owner of the land has no right to take the timber cut under the license *without due process of law.*'' Emphasis supplied. See: Sparkman v. Kirkpatrick, 17 Ala. App. 428, 85 So. 829. Compare: Hodges v. Buell, 134 Mich. 162, 95 N. W. 1078; Erskine v. Savage, 96 Me. 57, 51 A. 242, 243; Kerschensteiner v. Northern Michigan Land Co., 244 Mich. 403, 221 N. W. 322; Drake v. Wells, 11 Allen 141, 93 Mass. 141; Owens v. Lewis, 46 Ind. 488, 15 Am. Rep. 295.

However, there are exceptions to the revocation of a license: ▮ ''* * * a license under which expenses have been incurred, cannot be revoked, either by the licensor or by the grantee of the licensor who bought with notice of the license and with knowledge that the licensee had expended money and performed labor on the faith of the license. * * *

''Since timber severed from the soil during the life of the license becomes the personal property of the licensee, * * * after timber has actually been severed under the license the right of revocation is lost with respect to such timber. Where timber has been cut under a license, the license becomes coupled with an interest. A revocation merely cuts off the right to cut and remove timber in the future.'' 54 C. J. S., Logs & Logging, sec. 29 d, p. 731. See cases cited.

154

In 34 Am. Jur., Logs & Timber, secs. 46, 47, pp. 522, 523, the rule is stated as follows: "The severance of trees under a license for such purpose, prior to the revocation thereof, operates, ordinarily, to vest in the licensee the title to the trees so severed. The license after severance will become coupled with an interest and irrevocable, and the licensee will have a perfect right to enter and remove the trees thus severed. * * * Where the licensee has made expenditures upon the faith of the license, it has been held that it cannot be revoked at the will of the licensor unless the licensee is placed in statu quo." Compare Williams v. Bisson, 141 Me. 117, 39 A. (2d) 662.

In 17 R. C. L., Logs & Timber, sec. 7, at p. 1075, it is said: "* * * the revocation of the license by the vendor would be equivalent to a breach of an implied or express part of the contract, which would bar the purchaser from securing its benefits and would entitle him to sue for damages * * * A license cannot be revoked as to acts done under it. The revocation is prospective, not retrospective. Therefore it cannot affect the title to the vendee of trees severed at the time of revocation, and, in some instances, where the licensee has made expenditures upon the faith of the license, it cannot be revoked at the will of the licensor, unless the licensee can be placed in statu quo." See cases cited. 1 Thompson on Real Property, secs. 114, 115, pp. 161, 162; II Jones, The Law of Real Property, secs. 1605-1610, pp. 485-488. Compare: Gibson v. St. Joseph Lead Co., 232 Mo. App. 234, 102 S. W. (2d) 152, 156, 157.

Our state constitution, Article III, section 27, provides in part: "No person shall be deprived of * * * property without due process of law."

The Constitution of the United States, by the Fifth Amendment, provides: "No person shall be * * * deprived of * * property, without due process of law", and by the Fourteenth Amendment, it is provided, "nor shall any State deprive any person of * * * property, without due process of law".

Under the due process provision, no citizen shall arbitrarily be deprived of his property. This the executive, legisla-

tive, or the courts cannot do or authorize to be done. Due process of law extends to every case which may deprive a citizen of property. It requires an orderly proceeding adapted to the nature of the case and in accordance with law, in which the person has an opportunity before the taking to be heard, and to defend, protect and enforce his rights. Before the property of a person can be taken by another and converted to his own use, a hearing or opportunity to be heard is absolutely essential. We cannot conceive of due process of law without this.

The testimony of plaintiffs was not contradicted that they had, under the agreement or license, expended the sum of $5.00 per thousand board feet for felling, trimming and bucking the logs and the sum of $5.00 per thousand board feet for skidding the logs, which the defendant converted to his own use.

One who has purchased timber under an oral agreement and has felled it retains title to the timber after the oral agreement has been revoked. In Gibson v. St. Joseph Lead Co., supra, the court held that while the contract was not enforcible under the Statute of Frauds, it operated, until revoked, as a license to fell timber, and that the licensee obtained title thereto the moment the trees were severed from the stump. Such holding as to the non-revocability of the license to the vendee to enter on the land and remove the trees after he has severed them from the soil is based on the fact that it would be a breach of good faith to permit such a license to be revoked because the vendee has to spend money and services in severing the trees from the soil, and so far as they have been severed from the freehold they have been converted into personal property and the title to such trees has vested in the vendee, the license has been executed *pro tanto* and a revocation would operate as a fraud on the vendee and deprive him of his property to which he has become legally entitled.

Dixie Pine Products Co. v. Breland, 1949, 205 Miss. 610, 39 So. (2d) 265, 266: There the owner of land revoked license or permit to cut and remove timber, including logs felled by licensee, and landowner undertook to sell same to another party,

where at time of revocation of license, licensee had cut and felled some 60,000 feet of logs, of the value of $1,207.72, but had removed and paid for the stumpage only to the extent of $24.40, and he still owed landowner approximately $500 on stumpage for the remaining logs that had been cut and bunched in the woods for hauling at time of revocation; licensee had expended or incurred an expense of $509.74 in cutting and bunching. The court held that licensee owned the said logs, subject to the right of landowner to collect the stumpage or purchase price thereof per thousand feet.

The court stated: "* * * we are of the opinion that the title to the logs in question passed to the purchaser, subject to the right of the seller to enforce a lien for the purchase money thereon, when the standing timber was cut into logs for removal from the lands * * *" Judgment for the plaintiff for conversion was affirmed. Compare: Rankin v. Ridge, 53 N. M. 33, 201 Pac. (2d) 359, 7 A. L. R. (2d) 510.

In Clark v. Aldrich, 1 Cir., 278 F. 941, 942, action for conversion of wood and sawed lumber, Clark gave Aldrich a bill of sale of all the standing timber, Aldrich to have 2½ years to cut and remove it. Aldrich cut all of the timber within time; at expiration of time there were still on Clark's land about 425 cords of wood, 24 cords of slabs, and 150,000 feet of sawed lumber. Clark claimed the wood and lumber forfeited to him by reason of Aldrich's failure to remove it within the time, excluded Aldrich from the premises and it was conceded, converted the wood and lumber to his own use. The court stated: "Counsel on both sides agree, as clearly they must, that when the timber was cut it became personal property belonging to the plaintiff [Aldrich]. [Citing cases.] Under such circumstances the court below was plainly correct in ruling that this personal property could not be forfeited to the defendant unless such intention was plainly expressed in the contract; also that in this contract there was no language importing forfeiture of the cut wood and lumber. * * *

"Willful nonperformance, the basic idea in defendant's

eleventh, twelfth, and thirteenth assignments of error, has no bearing on the issue in this case. Of course the plaintiff's rights to the lumber and wood originated in the contract. But after it was cut it was his. This suit sounds in tort for its conversion. Plaintiff does not declare on a contract which he may or may not have willfully broken. Defendant's rights were all fully secured by the court's instruction that the jury should assess any damages defendant had suffered.''

In Giles v. Simonds, 15 Gray 441, 81 Mass. 441, 77 Am. Dec. 373, the court stated, relative to a verbal contract for the sale of standing wood or timber, ''It is only a license or authority to do certain acts on the land, which, but for such license or authority, would be acts of trespass. If it were otherwise, if under such a contract a right were conferred on the vendee to enter on the land and then to exercise a right or privilege at his own pleasure, free from the control of the owner of the land, during the continuance of the contract, it would clearly confer on the vendee a right or interest in the premises, which would contravene the Statute of Frauds. * * There can be no doubt that a valid license to enter on land may be given by parol. But this rule rests on the distinction that a license is only an authority to do an act or series of acts on the land of another, and passes no estate or interest therein.

''* * * It would be a manifest breach of good faith to permit such a license to be revoked. No man should be permitted to keep the property of others, by inducing them to place it upon his land, and then denying them the right to enter to regain its possession. * * *

''* * * But such a license executed to the extent to which it has been acted on has operated to induce the vendee to expend money and services on the property, and thereby to convert it into personal chattels which have become vested in him. The revocation of the license in such case would deprive the vendee of his property. It has therefore been held that such a license, while it is executory, may be countermanded, but that when executed it becomes irrevocable. Cook v. Stearns, 11 Mass. 533;

158

Cheever v. Pearson, 16 Pick. 266, 273; Ruggles v. Lesure, 24 Pick. 187, 190; Claflin v. Carpenter, 4 Metc. 580, 38 Am. Dec. 381; Nettleton v. Sikes, 8 Metc. 34.'' Compare: Buker v. Bowden, 83 Me. 67, 69, 21 A. 748; Rankin v. Ridge, supra. Holding to the same effect see Erskine v. Savage, supra.

Conversion, as stated by this court, is every unauthorized ██ assumption of dominion over personal property in hostility to the right of the true owner. And the detriment caused by the wrongful conversion is presumed to be the value of the property at the time of its conversion with interest from that time. R. C. M. 1947, sec. 17-404. The questions to be tried in an action for conversion of personal property, such as this, relate to the ownership and right of possession, and a wrongful taking by the defendant. See: Guthrie v. Holloran, 90 Mont. 373, 380, 3 Pac. (2d) 406; Tuttle v. Hardenberg, 15 Mont. 219, 223, 38 Pac. 1070, 1071; 53 Am. Jur., Trover & Conversion, sec. 24, p. 819, and cases cited; 65 C. J., Trover & Conversion, sec. 37 c, p. 29, and cases cited.

At the time plaintiffs arrived with their trucks upon defend- ██ ant's land to remove their logs to their sawmill, and defendant wrongfully and without authority exercised dominion and control over the logs, which were the personal property of plaintiffs, and unreasonably and without any just cause attempted to and did inject new conditions into the agreement with plaintiffs and wrongfully converted the logs to his own use, defendant thereby became liable for conversion of the same.

This action having been submitted to the jury upon erroneous ██ instructions and upon the wrong principles of law applicable to the facts, and the verdict being against law, the judgment appealed from is hereby ordered to be set aside and the plaintiffs granted a new trial consistent with the foregoing.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES METCALF, FREEBOURN and ANGSTMAN, concur.

Rehearing denied June 27, 1951.