No. 86-373

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

THE MONTANA POWER COMPANY,
          Plaintiff-Respondent,
     -vs-

ELLANOR FONDREN and SHARON COCHRAN,
          Defendants, Counter-Claimants
          and Third-Party Complainants-Appellants.
     -vs-

DEPARTMENT OF NATURAL RESOURCES AND CONSERVATION,
          Third-Party Defendant-Respondent.

-------------------------
                              No. 86-374
THE MONTANA POWER COMPANY,
          Plaintiff-Respondent,
     -vs-

LILLIAN M. KEZER; FARMERS HOME ADMINISTRATION;
and PARK COUNTY, A POLITICAL SUBDIVISION OF THE
STATE OF MONTANA,
          Defendants-Appellants.

_____

APPEAL FROM:   District Court of the Sixth Judicial District,
               In and for the County of Park,
               The Honorable Peter Rapkoch, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Knuchel & McGregor; Karl Knuchel, Jon Hesse argued,
          Livingston, Montana
          Moore, Rice, O'Connell & Refling; Robert J. Rice,
          Bozeman, Montana

     For Respondents:

          Corette, Smith, Pohlman & Allen; Gregory C. Black *+ Marshall*
          argued, Butte, Montana                              *Michelson*
          Donald D. MacIntyre argued, Dpet. Natural Resources,
          Helena, Montana
          Robert J. Brooks, Asst. U.S. Atty., ~~Marshall Mickelson~~
          ~~argued~~, Butte, Montana

                    (Continued, next page)

Submitted: February 10, 1987

Decided: May 12, 1987

Filed: MAY 12 1987

_Ethel M. Harrison_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Landowners Fondren, Cochran and Kezer appeal the order of the District Court, Sixth Judicial District, Park County, which found the District Court had no jurisdiction to determine the existence of public necessity with respect to a proposed electric transmission line under the provisions of the Utility Siting Act of 1973 or the Montana Major Facility Siting Act of 1975, Title 75, Chapter 20, MCA. We affirm for the reasons set forth below.

In June, 1974, Montana Power Company (MPC) filed an application for certification of environmental compatibility and public need under the Montana Utility Siting Act of 1973 (now the Major Facility Siting Act) for the purpose of gaining approval for construction of a transmission facility known as the Clyde Park - Dillon 161 kv transmission line. In October, 1977, the Board of Natural Resources and Conservation (Board) issued a certificate of environmental compatibility and public need, and issued findings of fact, opinion, decision, order and recommendations. The selection of the final centerline for the two mile wide corridor was made by the Board in October, 1985.

Landowners Fondren and Cochran purchased property southwest of Livingston, Montana, in 1980. The property is located in the "Canyon Mountain" area of the Clyde Park to Emigrant segment of the transmission line. When Fondren and Cochran purchased the real estate, there was nothing of record in the office of the county clerk and recorder to indicate that the power line corridor approved by the Board would pass through or include the property. They first learned the power line might be routed through their property

in late 1981. After the Board approved the final centerline location by order dated October 11, 1985, MPC sent letters to landowners Fondren, Cochran, and Kezer offering to purchase right-of-way easements and to pay an additional amount in advance for damages to crops and vegetation. The landowners refused the offers.

In February, 1986, MPC filed an action for condemnation of the landowners' properties pursuant to the Montana Eminent Domain Act. The cases were consolidated in May, 1986. MPC also filed motions to be put in possession and for a preliminary condemnation order. On May 30, 1986, the District Court began hearing testimony in the condemnation action. Hearings were also held June 12. Both MPC and the landowners submitted briefs on the issue of the District Court's jurisdiction under the Major Facility Siting Act, specifically § 75-20-407, MCA. On June 26, 1986, the District Court issued an order stating it had no jurisdiction to determine the existence of public necessity under the Major Facility Siting Act. The District Court issued a preliminary condemnation order in favor of MPC on July 7, 1986. That order has been stayed pending this appeal.

The landowners raise nine issues on appeal:

1. Did the District Court err by ruling that it had no jurisdiction to determine the existence of "necessity?"

2. Did the District Court err in finding that respondent MPC has established by a preponderance of the evidence those facts which are a prerequisite to condemnation under § 70-30-111, MCA?

3. Does the District Court have jurisdiction to determine what constitutes "least private injury" in an action for condemnation pursuant to the Montana Eminent Domain Act, Title 70, Chapter 30, MCA?

4. Does the District Court have jurisdiction to determine whether MPC has violated the findings of fact, opinion, decision, order and recommendation of the Board of Natural Resources?

5. Does the District Court have jurisdiction to determine whether the interests sought by MPC are the "minimum necessary interests" pursuant to § 70-30-203(6), MCA?

6. Whether MPC is restricted to those remedies provided by the Major Facility Siting Act, §§ 75-20-404, -405, or -408, MCA, thus precluding an action in eminent domain under Title 70, Chapter 30, MCA?

7. Has the District Court violated the landowners' due process rights under the Montana Constitution by vacating the condemnation hearings?

8. Was judicial review a remedy available to the landowners?

9. Does the Montana Major Facility Siting Act violate the landowners' due process rights where the Act provides no mechanism for recording and giving notice to successor landowners that a power line corridor has been approved across their property, and where eight and a half years have elapsed between the time of corridor approval and the choice of a centerline?

MPC contends there is only one issue on appeal:

Whether the District Court was correct in ruling it did not have jurisdiction to determine public necessity because that determination was already properly made by the Board of Natural Resources pursuant to the Major Facility Siting Act?

As a preliminary matter, MPC argues that this Court should not hear issues relating to the preliminary condemnation order, since the landowners never specifically

- 4 -

filed a notice of appeal as to that order. The procedural sequence of events was as follows:

1. June 26, 1986: District Court issued its order declining to take jurisdiction over the issue of public necessity.

2. July 3, 1986: Landowners filed their notice of appeal of the June 26 order.

3. July 7, 1986: The preliminary condemnation order was filed in District Court (although signed by Judge Rapkoch July 3).

The filing of a notice of appeal is jurisdictional, and the failure to timely file is a fatal defect altered only on the most extenuating circumstances. Leitheiser v. Montana State Prison (1973), 161 Mont. 343, 346, 505 P.2d 1203, 1205; Payne v. Mountain States Tel. & Tel. Co. (1963), 142 Mont. 406, 408, 385 P.2d 100, 102. While Rule 3, M.R.App.Civ.P., allows a suspension of the rules in the interest of expediting a decision before this Court, the late filing of a notice of appeal is one exception to the equitable reach of Rule 3. See Rules 21(b) and 5, M.R.App.Civ.P.; Zell v. Zell (1977), 172 Mont. 496, 565 P.2d 311.

We therefore hold that appellants' issues 2 and 3 relating to the preliminary condemnation order of July 7, 1986 are not properly before us, since appellants failed to timely file a notice of appeal to that order under Rule 5, M.R.App.Civ.P.

The other issues raised by appellants essentially fall into two categories: issues 1, 4, 5 and 6 present questions concerning the jurisdiction of the District Court and issues 7-9 raise questions of due process under the Montana Constitution. Accordingly, we will treat the issues in that order.

## JURISDICTION

The central jurisdictional issue is whether the District Court had the jurisdiction under § 70-30-111, MCA, to determine if the transmission line was a public necessity. The court ruled it had no jurisdiction to determine necessity since that determination had already been made by the Board of Natural Resources pursuant to the Major Facility Siting Act. The court stated that under §§ 75-20-301, -302, and -303, MCA, the Board was charged with determining the necessity of the facility before it could issue a certificate of environmental compatability and public need, such a certificate being required before the facility could be constructed. The court reasoned that the combination of those statutes and § 75-20-103, MCA, (providing that the Siting Act is to supersede all other laws) and § 75-20-407, MCA, (limiting the jurisdiction of courts to hear issues which would stop or delay construction of a facility) restrained it from determining the issue of necessity. The court thereafter issued a preliminary order of condemnation in favor of MPC.

A general rule of statutory construction is that when several statutes may apply to a given situation, the construction adopted should be one which will harmonize the several statutes and, if possible, give effect to all. Section 1-2-101, MCA; Schuman v. Bestrom (Mont. 1985), 693 P.2d 536, 538, 42 St.Rep. 54, 57. In construing statutes, the intention of the legislature should be followed, if possible. Section 1-2-102, MCA. Our task here is to reconcile, if possible, the provisions of the Siting Act and the Montana Eminent Domain Act.

In issue 6, the landowners contend that actions under the Siting Act and the Eminent Domain Act are separate and exclusive, and that MPC, having elected to file an action in

- 6 -

eminent domain, must follow the procedure set forth under the Eminent Domain Act. MPC argues that portions of the Eminent Domain Act have been superseded by the Siting Act, and it need follow eminent domain procedure only to the extent it does not conflict with the Siting Act.

The Siting Act and the Eminent Domain Act were enacted at different times, for different purposes. The eminent domain laws were first enacted in 1877 to authorize the taking of private property for public use. Section 70-30-101, MCA. The Siting Act, first enacted in 1973, was essentially an environmental law whose policy was to maintain and improve the environment while allowing controlled development of large energy facilities. Section 75-20-102, MCA. In terms of location and construction of these facilities, the Siting Act transferred the decision of where to route transmission lines from the utilities to the Board of Natural Resources and Conservation. Section 75-20-105, MCA.

However, while the Siting Act provides the procedure for obtaining approval to construct a major facility, it does not provide a mechanism for the acquisition of specific tracts of property on which to build the facility. The property must be obtained through condemnation proceedings under the laws of eminent domain. When the right of eminent domain is invoked, the provisions of the law granting the right must be complied with. Madison Co. v. Elford (Mont. 1983), 661 P.2d 1266, 1268, 40 St.Rep. 457, 460; Housing Authority v. Bjork (1940), 109 Mont. 552, 556, 98 P.2d 324, 326. MPC does not, as the landowners contend in issue 6, face an election of remedies in having to choose the procedure of either the Siting Act or the Eminent Domain Act. Rather, MPC must follow both laws in order first to gain approval for a

transmission line and second to acquire the property upon which to build the facility.

Before private property can be taken for a public use, a court must find that the plaintiff (condemnor) has shown the following facts by a preponderance of the evidence:

> (1) that the use to which the property is to be applied is a use authorized by law;
>
> (2) that the taking is necessary to such use; and
>
> (3) that an effort to obtain the property sought to be condemned was made by submission of a written offer and that such offer was rejected.

Section 70-30-111, MCA.

If the court finds and concludes from the evidence presented that the plaintiff has met the burden of proof under § 70-30-111, it must enter a preliminary condemnation order. Section 70-30-206(2), MCA.

The primary disagreement between MPC and the landowners is over the interpretation of § 70-30-111(2). MPC contends the District Court has no jurisdiction to determine whether or not the taking of appellants' property is necessary to the public use (here, construction of a 161 kv transmission line), since the necessity for the transmission line and its location had already been determined by the Board in administrative proceedings under the Siting Act. MPC argues that § 75-20-407, which limits the jurisdiction of courts to hear controversies involving major facilities, was enacted to foreclose all court action which would delay construction of the certified facility. The landowners, on the other hand, contend strict compliance with eminent domain procedure is required, and that therefore they are entitled to be heard in District Court on the question of the necessity of taking their particular tract of property.

- 8 -

Before turning to the due process issue of whether landowners have been given an opportunity to be heard, we will look at the specific question of whether §§ 75-20-103 and 75-20-407 affect the jurisdiction of the District Court to hear evidence on the necessity of taking a particular tract of property under the Siting Act. Other jurisdictions have had the opportunity to examine this question as it relates to location and construction of power lines across private property. While those jurisdictions do not have the equivalent of a Major Facility Siting Act, they do have specific statutory schemes which provide for location of electric transmission lines. The general rule is that where the legislature has delegated the power of determining the necessity of exercising the power of eminent domain to a private corporation or administrative agency, the corporation's or agency's determination of necessity is a political decision which is not subject to judicial review. In Re Bangor Hydro-Electric Co. (Me. 1974), 314 A.2d 800, 803; Otter Tail Power Co. v. Malme (N.D. 1958), 92 N.W.2d 514, 521; United States v. 277.97 Acres of Land (S.D. Cal. 1953), 112 F.Supp. 159, 162; see generally Annot., 19 A.L.R.4th § 8 at 1032 (1983). The corporation determining the location of the power line route is entitled to much latitude in its determination. Otter Tail Power Co., 92 N.W.2d at 521. Given the expertise and detailed knowledge of considerations involved in choosing a location for the power line, the route chosen by the corporation is given great weight under the law of eminent domain. Montana Power Co. v. Bokma (Mont. 1969), 153 Mont. 390, 399, 457 P.2d 769, 775. The determination reached by the corporation or agency will not be overturned absent proof of arbitrariness by clear and convincing evidence. Id.; see also Otter Tail Power Co., 92 N.W.2d at 521; In Re Bangor Hydro-Electric Co., 314 A.2d at

804; Northern States Power Co. v. Effertz (N.D. 1959), 94 N.W.2d 288, 291.

Each of the above cited cases, while granting that the corporation has been legislatively empowered with the initial determination of location for a power line, presupposes that the landowner has the opportunity to be heard and to present evidence of abuse of discretion or bad faith on the part of the condemnor. By similar analogy, we find that our legislature has empowered the Board of Natural Resources to make the determination as to the necessity of a facility such as the 161 kv transmission line at issue in this case. Under the statutory scheme of the Siting Act, the Board must make findings as to the environmental compatability of (including land use patterns) and need for the facility before it can issue a certificate to MPC. Sections 75-20-301(2), 75-20-503, MCA. At the time the certificate is issued, an aggrieved party such as the landowners in this action may seek judicial review of the issuance of the certificate, alleging error in the location of the facility or in the procedure by which the choice was made. Section 75-20-406, MCA. The standards of judicial review are the same as those for a contested case under the Montana Administrative Procedure Act (MAPA). Sections 75-20-406(2) and 2-4-704, MCA. Further, if some aspect of the Siting Act or certain conditions of the certificate are not being complied with by the agency or MPC, any resident of this state may bring an action in mandamus before the District Court of the First Judicial District, County of Lewis and Clark. Section 75-20-404, MCA.

The foregoing administrative procedure, subject to judicial review, controls the general placement of the transmission line under the Siting Act. After the certificate is issued and has survived any challenges under

- 10 -

judicial review, MPC has the right to construct its power line within a specific two mile wide corridor. The next step is the approval of a final centerline by the Board. When the final centerline is approved, MPC then may begin purchasing the specific property by means of negotiated settlement or condemnation.

If MPC proceeds thereafter to acquire an interest in property in a condemnation action, it must file a complaint alleging the facts necessary to be found under § 70-30-111, i.e., that the taking of a specific tract of property is necessary for construction of its transmission line. The question then faced by the District Court is whether it is empowered to determine that the final centerline location adopted by the Board is necessary to the public use authorized by law. MPC's argument, adopted by the District Court, is that the court may not even hear evidence on the question of necessity. Its argument is based on the following three sections of the Siting Act:

> 75-20-103. Chapter supersedes other laws or rules. This chapter supersedes other laws or regulations except as provided in 75-20-401 [not applicable here]. If any provision of this chapter is in conflict with any other law of this state or any rule promulgated thereunder, this chapter shall govern and control and the other law or rule shall be deemed superseded for the purpose of this chapter. Amendments to this chapter shall have the same effect.

> 75-20-407. Jurisdiction of courts restricted. Except as expressly set forth in 75-20-401, 75-20-406, and 75-20-408 [not applicable here], no court of this state has jurisdiction to hear or determine any issue, case, or controversy concerning any matter which was or could have been determined in a proceeding before the board under this chapter or to stop or delay the construction, operation, or maintenance of a facility, except to enforce compliance with this chapter or the

- 11 -

provisions of a certificate issued hereunder pursuant to 75-20-404 and 75-20-405 or 75-20-408.

75-20-205. Centerline location.

. . .

(2) The final centerline location must be determined in a noncontested case proceeding before the board after the submission of a centerline location report by the department [of natural resources and conservation].

A review of the legislative history of § 75-20-205(2), MCA, indicates the issue of judicial review of final centerline location was considered. Minutes of the meeting, Senate Natural Resources Committee, Montana State Senate, Consideration of HB 750 (March 25 and 28, 1985). Representatives of environmental groups proposed an amendment which would have required the final centerline location to be determined in a contested case proceeding. This would have triggered the judicial review section of MAPA, §§ 2-4-701 through -711. Both MPC and the Department of Natural Resources and Conservation (DNRC) opposed the amendment. Larry Fasbender, director of DNRC, argued that changing "noncontested case" to "contested case" would indicate the legislature preferred a contested case hearing. The motion to amend the language was withdrawn, and HB 750 was passed as it now reads in § 75-20-205.

The foregoing indicates that the legislature did not intend the final centerline determination by the Board to be subject to judicial review. In other words, once the specific route of the transmission line has been set by the Board, no court has jurisdiction to hear challenges to the location of the route. We therefore hold that by enacting §§ 75-20-205(2) and 75-20-407, MCA, the legislature has limited the court's jurisdiction in eminent domain cases to hear

challenges to the necessity of taking private property when such property is taken in compliance with the Montana Major Facility Siting Act.

By this holding, we do not intend to give the condemnor free rein in complying with the laws of eminent domain. In the complaint, the condemnor must still allege the facts necessary to be found in § 70-30-111, MCA, as well as the other requirements of § 70-30-203, MCA. However, the preponderance of the evidence on the § 70-30-111 findings which must be proven to the court before a preliminary condemnation order is issued is satisfied by appending to the complaint the Board's certificate of environmental compatability and public need and the Board's findings of fact, opinion, decision, order and recommendations.

We further note that a landowner is not without judicial remedy when there has been an abuse of discretion on the part of the Board, the DNRC, or the condemnor. In addition to challenges of abuse of discretion brought after the certificate has initially been granted, § 75-20-406, a landowner may challenge the lack of enforcement of conditions of the certificate under § 75-20-404. In this case, the certificate was issued to MPC on the condition that the final centerline would be located in cooperation with individual landowners over whose lands the transmission line would pass. Another condition of the certificate was that the selection of the final centerline would, as far as possible, avoid skylining and crossing irrigated or potentially irrigable lands except on property boundaries. Thus if the landowners felt these conditions were being breached, their proper remedy lies in a mandamus action under § 75-20-404.

DUE PROCESS

In issues 7 and 9, the landowners raise questions of due process under the Montana Constitution, Art. II, § 17. MPC

argues that constitutional issues may not be raised for the first time on appeal. However, this rule is subject to the exception that issues raised for the first time will be heard when they relate to the fundamental rights of the parties. Halldorson v. Halldorson (1977), 175 Mont. 170, 173, 573 P.2d 169, 171. We find that the taking of private property for public use is a fundamental right under our Constitution, and we will therefore consider the due process issues raised by the landowners.

The landowners argue that their right to an opportunity to be heard has been violated by the District Court, in its refusal to hear evidence from them on the issue of necessity, and by the Siting Act, by its failure to require recording and notice of the power line corridor.

> Due process does not require notice and hearing at any particular stage of an administrative proceeding leading to a deprivation . . . but only "at a meaningful time and in a meaningful manner."

Auclair v. Vermont Elec. Power Co., Inc. (Vt. 1974), 329 A.2d 641, 645 (citing Armstrong v. Manzo (1965), 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62, 66).

This Court has stated:

> [Due process] requires an orderly proceeding adapted to the nature of the case and in accordance with law, in which the person has an opportunity before the taking to be heard, and to defend, protect and enforce his rights. Before the property of a person can be taken by another and converted to his own use, a hearing or opportunity to be heard is absolutely necessary.

Sorensen v. Jacobson (1951), 125 Mont. 148, 154-155, 232 P.2d 332, 336. The question is at which point the individual has the right to be heard, so that the hearing is conducted at "a meaningful time and in a meaningful manner." As we stated in Sorensen, the lawful procedure by which a citizen is deprived

of property is related to the nature of the case and the applicable law. Id. The law in this case, as previously discussed, involves both the Siting Act and the Eminent Domain Act. We must scrutinize what happened here to determine whether the landowners had an adequate opportunity for notice and hearing prior to the taking of their property.

In this instance the Board granted MPC's certificate of environmental compatability and public need subject to the following conditions:

C. The final location of the centerline of the right-of-way of the transmission line within the approved corridor is subject to approval by the board. The selection of the final centerline location shall, as far as possible, avoid skylining, will avoid closely paralleling main highways, will avoid crossing irrigation or potential [sic] irrigated lands except on property boundaries, will cross roads and other streams directly rather than obliquely and will otherwise be so designed and constructed including the painting green of poles in forested areas and the minimizing of clear cutting so as to reduce to the fullest extent possible the visual impact of the lines.

D. The final proposed location of the centerline of the transmission facility shall be located in cooperation with and consultation with the applicant [MPC], the Department of Natural Resources and Conservation and the individual landowners whose lands the said transmission facility passes over, through and across so as to mitigate the effects of said transmission facilities on the individual landowner. When the applicant submits the final proposed location of the centerline for the final approval of this board, they [sic] shall include information substantiating compliance with this related condition.

A review of the record indicates letters were sent to the appellant landowners on at least three separate occasions notifying them of public meetings to gather landowner comment

on the proposed centerline location. On-site inspections and discussion of the proposed centerline location and alternative routes were conducted with the landowners by DNRC and MPC in October, 1984, May, 1985, and July, 1985. A detailed report to the Board was prepared by DNRC evaluating the alternative centerlines for the Canyon Mountain segment of the Clyde Park - Emigrant 161 kv transmission line. The report discussed the landowners' concerns over the impact of the transmission line on their property, compared the various alternative routes, and explained the reasons for choosing the preferred alternative.

We believe that the procedure outlined above provided adequate opportunity for the landowners to be heard on the subject of where the proposed facility was to be located on their property. Further, violations of the conditions of the certificate may be considered at any time by the District Court. Section 75-20-404, MCA. We therefore hold that the procedure required by the Montana Major Facility Siting Act meets the requirements of due process under the Montana Constitution. We also hold that the District Court did not violate the landowners' due process rights, in light of our holding limiting a district court's jurisdiction to determine public necessity under the Siting Act.

Landowners Fondren and Cochran argue that they personally never received notice of the public meetings and notice and comment period involving the initial decision to construct the line since they did not purchase their property until 1980, three years after MPC's certificate had been issued. While Fondren and Cochran did not have the opportunity to seek judicial review of the Board's decision to grant the certificate for the corridor, their predecessor-in-interest did. Further, Fondren and Cochran were and are in a position to challenge any violations of the

conditions of the certificate. One of the conditions was that the selection of the final centerline location be in consultation and cooperation with the affected landowners. The record discloses that Fondren and Cochran were consulted with on at least three separate occasions. If these landowners felt such consultation was ineffective or insufficient, they had a remedy in mandamus under § 75-20-404.

A final issue we consider is the landowners' issue no. 5. They claim that since § 70-30-203(6), MCA, requires a complaint in eminent domain proceedings to contain a statement "that the interest sought is the minimum necessary interest" to be taken, and such a statement does not appear in MPC's complaint, that therefore the action of the District Court here in determining it had no jurisdiction means it entered a preliminary order of condemnation without finding whether the taking was "the minimum necessary interest."

Landowners contend such a finding is a necessary part of a district court's jurisdiction in condemnation cases and must first be found by this District Court before a preliminary order of condemnation can be entered.

In a case arising under the Major Facility Siting Act however, the findings of the Board necessary for the issuance of a certificate are found in § 75-20-301, MCA. "Minimum necessary interest" in land to be taken by condemnation is not one of the criteria. Instead the Siting Act focuses on the "minimum adverse environmental impact" and that the facility "will serve the public interest, convenience and necessity." Section 75-20-301(2)(c), (g), MCA. We have set forth earlier in this Opinion the provisions of § 75-20-407, MCA, which puts great strictures on the power of courts to determine any "issue, case, or controversy concerning any matter" determined by the Board in issuing the certificate.

- 17 -

The District Court under § 75-20-407 has no jurisdiction to determine "minimum necessary interest" in this case if such an issue could have been determined in the proceedings before the Board. We find no weight in this issue.

The judgment of the District Court is affirmed, and the cause is remanded for further proceedings.

_John C. Sheehy_
Justice

We Concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_Fred J. Weber_

_L. C. Gulbrandson_

_William E. Hunt_
Justices